# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, SPIRIT LAKE TRIBE, WESLEY DAVIS, ZACHERY S. KING, COLLETTE BROWN,

*Plaintiffs-Appellees,*

v.

MICHAEL HOWE, in his official capacity as Secretary of State of North Dakota,

*Defendant-Appellee,*

NORTH DAKOTA LEGISLATIVE ASSEMBLY

*Movant-Appellant.*

ON APPEAL FROM ORDER DENYING INTERVENTION IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NORTH DAKOTA
(No. 3:22-cv-00022)

## BRIEF OF PLAINTIFFS-APPELLEES

Michael S. Carter
Matthew Campbell
Allison Neswood
NATIVE AMERICAN
RIGHTS FUND
250 Arapahoe Ave
Boulder, CO 80302
(303) 447-8760

Bryan L. Sells
THE LAW OFFICE OF
BRYAN L. SELLS
PO Box 5493
Atlanta, GA 31107
(404) 480-4212

*Counsel for Appellees*

Samantha B. Kelty
NATIVE AMERICAN RIGHTS
FUND
950 F Street NW, Ste. 1050
Washington, DC 20004
(202) 785-4166

Mark P. Gaber
Molly E. Danahy
Melissa Neal
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

Timothy Q. Purdon*
ROBINS KAPLAN, LLP
1207 West Divide Ave., Ste 200
Bismarck, ND 58501
(701) 255-3000

*\* Counsel for Appellees Turtle Mountain Band of Chippewa Indians and Spirit Lake Nation*

# SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

Following a four-day trial, the district court found that North Dakota's 2021 redistricting map violated Section 2 of the Voting Rights Act by cracking and packing Native American voters in Districts 9 and 15. As a result, the incumbent District 9 Native American senator lost reelection in 2022 due to white bloc voting, and for the first time in over 30 years, no Native American served in the North Dakota senate. After entering judgment, the district court provided the North Dakota Legislative Assembly ("the Assembly") 35 days to adopt a remedial plan for the court to review, if the Assembly so chose, otherwise the task of imposing a remedial plan would fall to the district court by law.

The non-party Assembly made a series of post-judgment filings, including a motion to intervene and a motion to extend the remedial deadlines, both of which were denied. Because the Assembly's appeals of those rulings are both flawed and meritless, the Court should affirm.

Plaintiffs believe "the decisional process would not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C). If the Panel determines that oral argument would aid in resolution of this matter, however, Plaintiffs will present their case orally.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION .......................................................................... 1

JURISDICTIONAL STATEMENT ..................................................... 2

STATEMENT OF THE ISSUES ........................................................ 3

STATEMENT OF THE CASE .......................................................... 4

SUMMARY OF ARGUMENT .......................................................... 12

ARGUMENT .............................................................................. 14

I.    The district court correctly determined that it lacked jurisdiction over the Assembly's motion to intervene, and the Assembly has waived any argument to the contrary. ........... 14

II.    Even if the district court did not lack jurisdiction, this Court should affirm because the Assembly failed to show that intervention was warranted ............................................. 19

    A.    The Assembly's motion was indisputably untimely. .......... 20

    B.    This Court should affirm because the Assembly lacked both standing to intervene and a protectable legal interest in the case. ........................................... 26

    C.    The Assembly is adequately represented. ........................ 31

    D.    The Assembly's intervention would severely prejudice Plaintiffs. ............................................................. 33

III.    This Court should deny the Assembly's appeal of the remedial order for lack of appellate jurisdiction ........................................ 36

IV.    The Assembly's appeal of the remedial order is both meritless and moot. ................................................................. 37

    A.    The district court afforded the Assembly a reasonable time to enact remedial legislation. .................................. 37

    B.    The Assembly's appeal of the remedial order is moot. ......... 43

V.    The Assembly waived any challenge to the remedial map. .......... 44

VI.    The Assembly's complaints about the remedial map are meritless. ................................................................. 45

CONCLUSION ................................................................. 50

CERTIFICATE OF COMPLIANCE ................................................. 52

CERTIFICATE OF SERVICE ................................................... 53

iii

# TABLE OF AUTHORITIES

| Case | Page |
|------|------|

*Abdurrahman v. Dayton*, 903 F.3d 813 (8th Cir. 2018) ......................... 44

*Allen v. Milligan*, 599 U.S. 1 (2023) .............................................. 4, 48, 49

*Ames v. Nationwide Mutual Insurance Company*, 760 F.3d 763
(8th Cir. 2014) .............................................................................. 45

*Arkansas Electric Energy Consumers v. Middle South Energy, Inc.*,
772 F.2d 401 (8th Cir. 1985) .............................................................. 21

*Berger v. North Carolina State Conference of the NAACP*,
142 S. Ct. 2191 (2022) ................................................................. 27, 31

*Board of Education of St. Louis v. State of Missouri*, 936 F.2d 993
(8th Cir. 1991) .......................................................................... 16, 18

*Byrant v. Crum & Forster Specialty Insurance Co.*,
502 Fed. Appx. 670 (9th Cir. 2012) .................................................... 16

*Calvin v. Jefferson County Board of Commissioners*,
172 F. Supp. 3d 1292 (N.D. Fla. 2016) .............................................. 40

*Cameron v. EMW Women's Surgical Center P.S.C.*, 595 U.S. 267
(2022) ...................................................................................... 22, 23

*Cooper v. Harris*, 581 U.S. 285 (2017) ............................................. 49

*Covington v. State*, 267 F.Supp.3d 664 (M.D. N.C. 2017) ..................... 41

*Cox v. Mortgage Electronic Registration Systems, Inc.*, 685 F.3d 663
(8th Cir. 2012) ............................................................................ 14

*Dillard v. Chilton County Commission*, 495 F.3d 1324
(8th Cir. 2007) ............................................................................ 26

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) .......................... 15, 16

*Drywall Tapers & Pointers of Greater New York, Local Union 1974 v.
Nastasi & Associates Inc.*, 488 F.3d 88 (2d Cir. 2007) ...................... 16

iv

*Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069
    (8th Cir. 2023) ................................................................ 32, 33

*Garza v. County Of Los Angeles*, 918 F.2d 763 (9th Cir. 1990) ............. 23

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982) ................................................. 2, 3, 15, 17

*Harris v. McCrory*, 159 F. Supp. 3d 600 (M.D.N.C. 2016) .................... 40

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) .......................................... 29

*In re Jones*, 768 F.2d 923 (7th Cir. 1985) .............................................. 15

*In re North Dakota Legislative Assembly*, 70 F.4th 460
    (8th Cir. 2023) ........................................................ 5, 33, 34

*Jenkins v. Winter*, 540 F.3d 742 (8th Cir. 2008) .......................... 3, 14, 15

*Larios v. Cox*, 300 F. Supp. 2d 1320 (N.D. Ga. 2004)
    *aff'd*, 542 U.S. 947 (2004) ................................................... 40

*Marino v. Ortiz*, 484 U.S. 301 (1988) ................................................ 3, 36

*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996) ............................ 26, 30

*Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX, 2023 WL 8183557
    (D. Ariz. Sept. 14, 2023) ...................................................... 35

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ................................... 35

*Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298 (5th Cir. 1984) ... 16

*Powell v. Ridge*, 247 F.3d 520 (3d Cir. 2001) ................................... 34, 35

*Purcell v. Gonzales*, 549 U.S. 1 (2006) ............................................... 6, 36

*Robinson v. Ardoin*, 37 F.4th 208 (5th Cir. 2022) ............................... 5, 40

*Roe v. Town of Highland*, 909 F.2d 1097 (7th Cir. 1990) ...................... 16

*Singleton v. Merrill*, 576 F. Supp. 3d 931 (N.D. Ala. 2021) ................... 35

*Swinton v. SquareTrade, Inc.*, 960 F.3d 1001 (8th Cir. 2020) .............. 36

Appellate Case: 24-1171    Page: 6    Date Filed: 05/17/2024    Entry ID: 5394982

*United Food & Commercial Workers Union, Local No. 663 v.
United States Department of Agriculture*, 36 F.4th 777
(8th Cir. 2022) ..................................................................... 3, 20, 21, 24

*United States v. Ritchie Special Credit Investments, Ltd.*,
620 F.3d 824 (8th Cir. 2010) ................................................................ 20

*Virginia House of Delegates v. Bethune-Hill*,
139 S. Ct. 1945 (2019) ................................................................ 28, 29

*Williams v. City of Texarkana*, 861 F. Supp. 756 (W.D. Ark. 1992) ....... 40

*Wise v. Lipscomb*, 437 U.S. 535 (1978) ..................................... 3, 5, 37, 38

## Constitutional Provisions

N.D. Const. Art. IV. § 2 .................................................................... 29

## Statutes & Regulations

Fed. R. App. P. 4(a)(4) ................................................................ 15

Fed. R. App. P. 4(a)(vi) ................................................................ 18

Fed. R. Civ. P. 24(a) ................................................................... 19

Fed. R. Civ. P. 24(a)(2) ............................................................... 19

Fed. R. Civ. P. 24(b)(1) ............................................................... 19

Fed. R. Civ. P. 24(b)(3) ............................................................... 20

Fed. R. Civ. P. 26 ...................................................................... 34

Fed. R. Civ. P. 30 ...................................................................... 34

Fed. R. Civ. P. 33 ...................................................................... 34

Fed. R. Civ. P. 35 ...................................................................... 34

Fed. R. Civ. P. 36 ...................................................................... 34

Fed. R. Civ. P. 37 ...................................................................... 34

Fed. R. Civ. P. 60 ...................................................................... 18

N.D.C.C. § 54-12-01(3) ................................................................. 28

Appellate Case: 24-1171    Page: 7    Date Filed: 05/17/2024 Entry ID: 5394982

N.D.C.C. § 54-35-17.............................................................. 28, 29

**Other Authorities**

North Dakota Secretary of State, *North Dakota Election Calendar 2024*,
    https://vip.sos.nd.gov/pdfs/Portals/electioncalendar.pdf.................... 44

Order, *Caster v. Allen,* No. 2:21-cv-01536-AMM (N.D. Ala. June 20,
    2023) *stay denied*, *Allen v. Milligan*, 144 S. Ct. 476 (2023) (Mem.) .. 40

Appellate Case: 24-1171    Page: 8    Date Filed: 05/17/2024 Entry ID: 5394982

# INTRODUCTION

The history of the Assembly's participation in the underlying proceeding is one of gamesmanship and basic procedural error. The Turtle Mountain Band of Chippewa Indians and the Spirit Lake Tribe, ("Tribal Nations") and three individual Native Americans (collectively "Plaintiffs") filed this Section 2 case in February 2022. From the outset, the Assembly resisted any participation in the trial proceedings by relying on its non-party status to avoid producing relevant discovery. Then, nearly two years after the case was filed, and after Plaintiffs proved their claims and won at trial, the Assembly filed a post-judgment motion to intervene. The Assembly demanded to be made a party for the purposes of joining the defendant Secretary of State's ("Secretary") motion to stay the trial court judgment and participating in the Secretary's appeal of the merits, which had already been noticed. The district court denied the motion for lack of jurisdiction in light of the pending appeal, and because it was "axiomatic" that the motion was untimely.

In response, the Assembly unnecessarily multiplied the proceedings by both appealing the denial of intervention in the district

1

court and moving to intervene on appeal in the merits proceeding, as well as by seeking emergency relief for the first time in this Court to delay the remedial process. This required both the district court and this Court to oversee several rounds of emergency briefing, much of which could have been avoided had the Assembly sought to intervene at the inception of the litigation. Instead, the Assembly waited nearly two years and until after judgment was entered to seek to intervene, allowing the Assembly to reap the benefits of staying on the sidelines through trial. The impropriety of the Assembly's belated attempt to participate in the litigation has been further compounded by its failure to comply with basic jurisdictional and procedural rules, and by its complete disregard for the record developed at trial and the district court's findings. In light of the numerous flaws in the Assembly's motion to intervene below and its appeal here, the Court should deny the request for oral argument, affirm the denial of intervention, and dismiss the non-party appeal of the remedial order for lack of appellate jurisdiction.

## JURISDICTIONAL STATEMENT

The district court lacked jurisdiction over the Assembly's motion to intervene due to the Secretary's previously filed notice of appeal. *See*

2

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58-60 (1982). This Court lacks appellate jurisdiction over the non-party Assembly's appeal of the remedial order. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988).

## STATEMENT OF THE ISSUES

1.    Whether the district court properly denied the Assembly's motion to intervene for lack of jurisdiction under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), and whether the Assembly waived any argument to the contrary, *see Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008).

2.    Whether the district court properly denied the Assembly's motion to intervene as untimely, where the Assembly actively resisted becoming a party to the case until after judgment was entered for Plaintiffs, and then delayed weeks before seeking to intervene, *see United Food & Commercial Workers Union, Local No. 663 v. United States Dep't of Agric.*, 36 F. 4th 777 (8th Cir. 2022).

3.    Whether the district court properly entered a remedial plan after the legislature failed to do so during the reasonable time provided by the court, *see Wise v. Lipscomb*, 437 U.S. 535 (1978).

3

4. Whether the district court properly entered Plaintiffs' demonstrative plan 2 as the remedial map, after determining at trial that it was compact, complied with traditional redistricting criteria including respect for political boundaries, was driven by non-racial interests, and was not oddly shaped, *see Allen v. Milligan*, 599 U.S. 1 (2023).

## STATEMENT OF THE CASE

The Tribal Nations, together with three individual voters, filed suit in February 2022 challenging the November 2021 enactment of state senate Districts 9 and 15 and state house subdistricts 9A and 9B under Section 2 of the Voting Rights Act of 1965. App. 5; R. Doc. 1.[1] In October 2022, Plaintiffs served third-party discovery requests on current and former members and staff of the Assembly who served on the legislative Redistricting Committee or were otherwise involved in the redistricting process. *See, e.g.*, Pls. App. 20-32; R. Doc. 47. The Assembly spent the subsequent nine months resisting those requests—largely successfully—on the grounds that it was not a party to the litigation.[2] Plaintiffs only

---

[1] "App." and "Add." refer to the Assembly's Appendix and Addendum. "Pls. App." refers to Plaintiffs' Appendix.

[2] *See*, *e.g.* Pls. App. 1; R. Doc. 38, at 1 (emphasizing that "neither the Legislative Assembly nor [an individual legislator] is a party to this action and neither has made any appearance in this action" with respect

4

obtained discovery from one former legislator, whom the district court found to have waived legislative privilege by voluntarily participating in litigation over the 2021 redistricting plan. This Court declined to disturb that ruling. *See In re North Dakota Legislative Assembly*, 70 F.4th 460, 465 (8th Cir. 2023).

After a four-day bench trial in June 2023, the district court entered judgment for Plaintiffs on November 17, 2023. App. 42; R. Doc. 125, at 1. The district court provided the Assembly with 35 days to enact a plan to remedy the Section 2 violation, setting a deadline of December 22, 2023, App. 80; R. Doc. 125, at 39, after which the Court was obligated by law to enact its own remedial plan. *See Wise v. Lipscomb*, 437 U.S. 535, 540 (1978); *Robinson v. Ardoin*, 37 F.4th 208, 232 (5th Cir. 2022) (holding

---

to the merits of the case.); Pls. App. 2; R. Doc. 38, at 2 (contending that legislative participation in this litigation "would chill the legislative process"); Pls. App. 38; R. Doc. 49, at 4 (relying on precedent stating that "the time and energy required to defend against a lawsuit are of particular concern" in support of its effort avoid participation in this action) (internal citations omitted); Pls. App. 56, R. Doc. 50, at 10 (objecting to the participation of the Assembly and its members in this action "when the lawmakers are not a named party to the litigation because complying with discovery requests detracts from the performance of official duties").

5

that 14 days was a reasonable time to allow legislature to remedy a Section 2 violation).

The Secretary noticed his appeal on December 4, 2023, which was docketed in this Court under case number 23-3655. App. 83-86; R. Doc. 130; *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 23-3655 (8th Cir. Dec. 6, 2023). That same day, the Secretary moved for a stay pending appeal in the district court. App. 87; R. Doc. 131, at 1. The Secretary's stay motion did not contend that the district court erred in finding that the enacted map violated Section 2, but rather that Plaintiffs lacked a cause of action to bring such a claim under 42 U.S.C. 1983, and that, to avoid any concerns under *Purcell v. Gonzales*, 549 U.S. 1 (2006), the state legislative map for the 2024 elections needed to be settled no later than December 31, 2023. App. 92; R. Doc. 132, at 2. The Secretary also notified the district court that the Assembly would not be adopting a new map prior to the expiration of the court's 35-day deadline. App. 107; R. Doc. 132, at 17.

In light of the Secretary's representations, Plaintiffs promptly filed a motion to amend the district court's remedial order, maintaining the 35-day window for the Assembly to enact and the Secretary to submit for

6

review a remedial map absent court intervention, but proposing a shortened schedule for objections and responses to any such map. App. 120-21; R. Doc. 134, at 2-3. In the alternative, if no such map was enacted by the Assembly and submitted by the Secretary within the 35-day window, Plaintiffs proposed that the district court order one of Plaintiffs' demonstrative plans into effect as the remedial map. App. 120-21; R. Doc. 134, at 2-3. Both proposals were intended to ensure that a remedial plan was in place by December 31, to obviate the Secretary's concerns under *Purcell*. App. 122-23; R. Doc. 134, at 4-5.

The Assembly did not take any official action until eighteen days into the 35-day remedial period. On December 5, 2023 the Legislative Management Committee voted to hire counsel and attempt to intervene in the litigation. App. 135. Four days later—nearly two years after the case began, three weeks after judgment was entered, and despite the fact that the Secretary had already noticed his appeal, App. 83-86; R. Doc. 130—the Assembly moved to intervene in the district court. The Assembly sought specifically to intervene to join in the Secretary's motion for a stay of the merits judgment pending appeal, to participate in that appeal, and to oppose Plaintiffs' request to amend the remedial order to

7

ensure a new map was enacted by the Secretary's December 31 deadline. App. 163; R. Doc. 150, at 2. Despite not participating in trial, the Assembly directly contested the district court's findings that the "existing plan violates Section 2, [and] that Plaintiffs met their burden to establish liability," and expressly "preserve[d] all arguments for appeal." App. 169; R. Doc. 150, at 8 n.5. The Assembly also "agree[d] the legal rational articulated" by the Secretary—that Plaintiffs lacked a cause of action under Section 1983 and that it was too late to enact a remedial map for the 2024 election—"certainly justified a stay" and for that reason sought to "join[] in the Secretary's Motion." App. 173, 176; R. Doc. 150, at 12, 15.

In a single order, entered on December 12, 2023, the district court denied the Secretary's fully briefed motion for a stay, denied Plaintiffs' fully briefed motion to amend the remedial order, and denied the Assembly's motion to intervene without waiting for a response from the parties. Add. 8; App. 185; R. Doc. 153, at 6. The district court found that the Secretary was not likely to succeed on the merits of his argument regarding Section 1983 and that *Purcell* did not apply because the November 2024 election was not imminent. Add. 3-7; App. 180-84; R. Doc. 153, at 1-5. The district court also found that it was "axiomatic" that the

8

Assembly's motion to intervene was untimely, and that regardless, it lacked jurisdiction to hear a motion to intervene once the Secretary noticed his appeal. Add. 7; App. 184; R. Doc. 153, at 5. The court separately found that it lacked jurisdiction to amend the remedial order once this Court had appellate jurisdiction over the case. Add. 7; App. 184; R. Doc. 153, at 5.

The following day, the Secretary moved for a stay of the judgment in this Court, which was denied. *See* Mot. for Stay, Case No. 23-3655; Dec. 15 Order, Case No. 23-3655.

The Assembly appealed the denial of its motion to intervene, App. 186-88; R. Doc. 154, creating a second proceeding in this Court, which was docketed as Case No. 23-3697. Two days after this Court denied the Secretary's motion for a stay, the Assembly simultaneously moved to intervene in the Secretary's appeal in Case No. 23-3655 and, for the first time in any court, sought emergency relief from the district court's remedial deadlines in its own collateral appeal of the denial of intervention. *See* Assembly Mot. to Intervene, Case No 23-3655; Assembly Mot. for Misc. Relief, Case No. 23-3697. The Court ordered expedited responses from Appellants on both motions.

9

The Secretary opposed the motion for emergency relief from the remedial deadlines. Sec'y Resp. to Mot. for Misc. Relief, Case No. 23-3655. Plaintiffs opposed both motions. Pls. Opp. to Mot to Intervene, Case No. 23-3655; Pls. Opp to Mot. for Misc. Relief, Case No. 23-3697.

Once briefing was complete on the Assembly's motion for relief from the remedial deadlines on December 20, 2023, this Court denied the motion "without prejudice to the filing of such motions in the district court for such consideration as may be appropriate." Dec. 20 Order, Case No. 23-3697. With the appeal of its motion to intervene still pending, however, the Assembly remained a non-party in the district court. Add. 9; App. 285; R. Doc. 164, at 1. Without first seeking leave from the district court, the Assembly filed a new, non-party motion to extend the deadline to submit a legislatively enacted remedial plan to the court until February 9, 2024. App. 189-191; R. Doc. 156.

In the interim, the Legislative Management Committee met and considered several new maps, including the two demonstrative plans submitted by Plaintiffs at trial. App. 262-63; R. Doc 160. As between the two demonstrative plans, the Committee expressed a preference for demonstrative plan 2. App. 262-63; R. Doc. 160, at 4-5. In light of this

10

preference, and the district court's finding that demonstrative plan 2 "comport[s] with traditional redistricting criteria, principles, including compactness, contiguity, respect for political boundaries, and keeping together communities of interest," App. 59-60; R. Doc. 125, at 18-19, Plaintiffs moved the district court for an order implementing demonstrative plan 2 as the remedial plan, App. 261-63; R. Doc 160, at 3-5. The defendant Secretary of State did not respond to the motion.

The district court denied the Assembly's non-party motion to extend the remedial deadlines and granted Plaintiffs' motion to impose demonstrative plan 2 to remedy the Section 2 violation. Add. 9-11; App. 285-87; R. Doc. 164, at 2-3. The court found that demonstrative plan 2 "corrects the Section 2 violation, is narrowly tailored, and achieves population equality," reiterated that the plan "comports with traditional redistricting criteria," and found that it "require[d] changes to only three districts . . . and is the least intrusive option that complies with Section 2 and the Constitution." Add. 10-11; App. 286-87; R. Doc. 164, at 2-3. Finally, it deemed "the Secretary's lack of response as an admission" that Plaintiffs' motion was "well taken." Add. 11; App. 287; R. Doc. 164, at 3.

Appellate Case: 24-1171     Page: 19     Date Filed: 05/17/2024 Entry ID: 5394982

The Assembly subsequently filed a non-party appeal of the remedial order, App. 288-290; R. Doc. 165, creating a third proceeding in this Court, which was docketed as Case No. 24-1171. This Court then set a consolidated briefing schedule on the Assembly's appeals. Consol. Briefing Schedule, Case No. 23-3697, Jan. 30, 2024.

This Court also denied the Assembly's motion to intervene in the Secretary's merits appeal. Judge Order, Case No. 23-3655, Jan. 26. 2024. That appeal is fully briefed and has been screened for oral argument. *See* Docket Entry, Case No. 23-3655, Apr. 11, 2024.

## SUMMARY OF ARGUMENT

The district court properly denied the Assembly's untimely post-judgment motion for lack of jurisdiction. Because the Assembly does not actually challenge the district court's jurisdictional ruling, it has waived any argument that the district court erred. Regardless, nearly every circuit to consider the matter has concluded that the filing of a notice of appeal deprives a district court of jurisdiction to consider a subsequent motion to intervene. What's more, the Assembly also lacks standing to intervene in this case. As such, the district court did not err in

12

determining that it lacked jurisdiction over the Assembly's motion to intervene.

Even if the district court had jurisdiction over the motion, this Court should affirm the denial of intervention because the Assembly's motion was indisputably untimely. The Assembly was on notice that its interests in this matter were implicated for over a year before judgment was entered. Indeed, it actively resisted any participation in the case for months and only reversed course once the district court entered judgment in favor of Plaintiffs. This type of gamesmanship is highly prejudicial to Plaintiffs, and the district court was correct in finding it "axiomatic" that the motion was untimely. And because intervention was properly denied, this Court lacks jurisdiction over the Assembly's non-party appeal of the remedial plan.

But even assuming the Assembly were otherwise entitled to intervene and to challenge the remedial order, its complaints regarding the remedial process are both meritless and moot—underscoring the impropriety of its belated appearance in this litigation. Finally, the Assembly's attempt to characterize the remedial plan imposed by the district court as a racial gerrymander—an argument that it did not raise

13

below and thus is waived here—mischaracterizes the record, misstates the law, and otherwise lacks merit.

For all these reasons, the Court should affirm the rulings below.

## ARGUMENT

**I. The district court correctly determined that it lacked jurisdiction over the Assembly's motion to intervene, and the Assembly has waived any argument to the contrary.**

The district court correctly denied the Assembly's motion to intervene on the grounds that the Secretary's previously filed notice of appeal divested it of jurisdiction over the case. *See* App. 184; R. Doc. 153, at 5 ("[t]he filing of a notice of appeal generally divests the district court of jurisdiction over the case, and the district court cannot reexamine or supplement the order being appealed."). The Assembly fails entirely to address the chief basis upon which the district court denied its intervention motion, much less to "provide a meaningful explanation" or "any citation to relevant authority" for why the court retained jurisdiction to consider its motion. *Cox v. Mortgage Electronic Registration Systems, Inc.*, 685 F.3d 663, 674 (8th Cir. 2012). As a result, any argument that the district court erred in denying the motion for lack of jurisdiction is waived. *Id.*; *See also Jenkins v. Winter*, 540 F.3d 742,

751 (8th Cir. 2008) ("[c]laims not raised in an opening brief are deemed waived.").

Regardless, the district court properly found that it lacked jurisdiction over the Assembly's motion due to the Secretary's previously filed notice of appeal. To prevent situations where a district court and court of appeals could have "the power to modify the same judgment," as a general rule, "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58-60 (1982) (*per curiam*); *see also In re Jones*, 768 F.2d 923, 931 (7th Cir. 1985) (Posner, J., concurring) (explaining that the rule is intended "to keep the district court and the court of appeals out of each other's hair"). Although this rule is subject to certain exceptions, none of those exceptions include a pending motion to intervene. *See, e.g.*, Fed. R. App. P. 4(a)(4) (delaying the effectiveness of a notice of appeal until after the district court decides certain post-judgment motions, but not for a motion to intervene).

As a result, "[t]he majority of [the] circuits that have confronted [it] have applied the general jurisdiction-stripping rule to hold that an

15

effective notice of appeal deprives a district court of authority to entertain a motion to intervene." *Doe v. Public Citizen*, 749 F. 3d 246, 285 (4th Cir. 2014) (citing *Taylor v. KeyCorp*, 680 F.3d 609, 617 (6th Cir. 2012); *Drywall Tapers & Pointers of Greater New York, Local Union 1974 v. Nastasi & Assocs. Inc.*, 488 F.3d 88, 94–95 (2d Cir. 2007); *Roe v. Town of Highland*, 909 F.2d 1097, 1100 (7th Cir. 1990); *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 (5th Cir. 1984)); *see also See Byrant v. Crum & Forster Specialty Ins. Co.*, 502 Fed. Appx. 670, 671 (9th Cir. 2012) ("[Party's] subsequent notice of appeal divested the district court of its jurisdiction; the district court thus lacked jurisdiction to entertain appellants' motion to intervene."). The district court correctly applied this rule to determine that it lacked jurisdiction over the motion to intervene. *See* App. 184; R. Doc. 153, at 5.

The fact that the district court retained jurisdiction to supervise its injunction with respect to the ongoing *remedial* proceedings, *see Board of Education of St. Louis v. State of Missouri*, 936 F.2d 993, 995-96 (8th Cir. 1991), does not mean that it had jurisdiction over the Assembly's motion to intervene as a full party in the case, including for the purpose of participating in the Secretary's appeal, *see* App. 173, 176; R. Doc. 150, at

16

12, 15. The Assembly's motion did not seek leave to participate only in the remedial process, but rather explicitly stated that if intervention were granted, it intended to present arguments contesting that "its existing plan violates Section 2, or that Plaintiffs met their burden to establish liability", which it "preserve[d] . . . for appeal." App. 169; R. Doc. 150, at 8 n.5; *see also* Pls. App. 280-81; R. Doc. 148, at 6-7 (arguing, unsuccessfully, that a stay was warranted because Plaintiffs do not have a cause of action under Section 1983); Pls. App. 277; R. Doc. 148, at 3 n.2 ("The Assembly contests the Court's application of *Gingles* and asserts the Plaintiffs failed to meet their burden of proof. . . . The Assembly preserves its right to contest the merits on appeal."); Assembly Br. 4 (contesting the district court's merits ruling); *id.* at 20 (contesting Plaintiffs' right to bring their claims pursuant to Sec. 1983). These are precisely the "aspects of the case involved in the appeal," *Griggs*, 459 U.S. at 58-60, over which the district court was divested of jurisdiction when the Secretary filed his notice of appeal. Thus, the district court properly denied the motion to intervene for lack of jurisdiction, notwithstanding the fact that it still retained jurisdiction over the remedial proceedings. *Id.*

17

This Court's denial of the Assembly's motion to delay the remedial proceedings—relief that, at the time, it had not previously sought in the district court—does not suggest otherwise. There, the Court simply cited *Board of Education of St. Louis* for the proposition that the Assembly's motion to extend the remedial deadlines was denied "without prejudice to the filing of motions in the district court for such consideration *as may be appropriate*." Dec. 20 Order, Case No. 23-3697 (emphasis added).

While Plaintiffs maintain that any motion filed by the Assembly at that late date would have been untimely and precluded by the Assembly's prior actions in the case, the Assembly did not even attempt to conform its subsequent motion to any appropriate procedure. The Assembly did not seek reconsideration of the district court's ruling on its motion to intervene in light of the Eighth Circuit's order. *See* Fed. R. Civ. P. 60, Fed. R. App. P. 4(a)(vi). It did not file a new motion seeking intervention solely for the purpose of participating in the remedial process. Nor did it seek leave to file any additional motion, notice, or briefing in the district court whatsoever. Add. 9-10; App. 285-86; R. Doc. 164, at 1-2. Instead, the Assembly simply continued filing motions and opposing Plaintiffs'

18

requests as if it were a party in the case, despite the district court's denial of its motion to intervene. *Id.*[3]

Because the Assembly does not challenge the district court's ruling that it lacked jurisdiction and makes no attempt to explain why its subsequent filings in the district court were "appropriate" in light of its non-party status, this Court should affirm in Case No. 23-3697.

## II. Even if the district court did not lack jurisdiction, this Court should affirm because the Assembly failed to show that intervention was warranted.

Under the federal rules, a party seeking to intervene, whether as of right or permissively, must make a timely motion. Fed. R. Civ. P. 24(a), (b)(1). To intervene as of right, a party must show that it has a protectable legal interest at stake and that it is not adequately protected by the existing parties. *See* Fed. R. Civ. P. 24(a)(2). For permissive intervention a party must show that its intervention will not delay the proceedings or

---

[3] The Assembly complains that the district court faulted it for filing a motion "despite" previously denying its motion to intervene. But this gets it backward. The district court faulted the Assembly for attempting to assert the rights and privileges of a party to the litigation *in spite* of the fact that its intervention had been denied. Add. 9; App. 285; R. Doc. 164, at 1.

Appellate Case: 24-1171    Page: 27    Date Filed: 05/17/2024 Entry ID: 5394982

unduly prejudice the existing parties. Fed. R. Civ. P. 24(b)(3). Because the Assembly failed to meet either standard, the Court should affirm.

## A. The Assembly's motion was indisputably untimely.

This Court should affirm because, as the district court noted, it is "axiomatic" that Assembly's motion was untimely. Add. 7; App. 184; R. Doc. 153, at 5. "[T]he timeliness of a motion to intervene is a threshold issue." *United States v. Ritchie Special Credit Inv.*, 620 F.3d 824, 832 (8th Cir. 2010) (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973)). "To assess timeliness, courts consider four factors: '(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties.'" *United Food & Commercial Workers Union, Local No. 663 v. United States Dep't of Agric.*, 36 F. 4th 777, 780 (8th Cir. 2022). This Court "disfavors intervention late in litigation" where the case "has progressed to the end-game." *Id.*

The Assembly's motion was untimely regardless of whether it is measured against the litigation as a whole, or against the remedial

20

process. The Assembly moved to intervene nearly two years after the case was filed, five months after trial, weeks after judgment was entered, and days after the Secretary noticed an appeal. Moreover, the Assembly waited 21 days into the 35-day remedial period set by the district court before seeking to intervene to defend its purported interests in enacting a remedial plan. While the Assembly repeatedly asserts that it moved "swiftly" to intervene once judgment was entered, Assembly Br. 5, 13, 38, this Court's precedents suggest otherwise. *See United Food*, 36 F. 4th at 780 (finding proposed intervention one month into a 90-day remedial period to be "extremely late" such that it "weigh[ed] strongly" against intervention even where judgment was stayed); *see also Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.*, 772 F. 2d 401, 403 (8th Cir. 1985) (finding proposed intervenors' contention that the Labor Day holiday contributed to their delay unpersuasive when motion to intervene was not filed until more than a week after the holiday); *see id.* (finding intervenors' assertion that they needed time to coordinate among 15 member organizations "plausible, yet not overly convincing in justifying nearly a week's delay"). Under any measure, the Assembly's delay renders its motion untimely.

21

The Assembly relies on *Cameron v. EMW Women's Surgical Center P.S.C.*, 595 U.S. 267, 280 (2022), to support its assertion that its obligation to intervene in this case was not "triggered" until final judgment was entered. But *Cameron* simply reiterates that a prospective intervenor must move promptly as soon it discovers that its interests "would no longer be protected by the parties in the case." *Cameron*, 595 U.S. at 280. There, the Supreme Court found the Kentucky Attorney General's motion to intervene on appeal timely where it was filed *two days* after he became aware that the Kentucky Secretary of Health and Family Services would no longer defend state law. 595 U.S. at 280. The Court emphasized that the intervention motion was timely because it was filed "as soon as it became clear" that the existing parties would no longer represent the State's interest. *Id.* at 279-80 (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

Here, the Assembly asserts that its interests necessarily diverged from the Secretary's during the remedial proceedings by virtue of its distinct governmental role. App. 169; R. Doc. 150, at 8; *see also* Assembly Br. 4. But given that its purportedly unique interests arise out of the Assembly's and the Secretary's respective roles in state government, *see*

22

App. 169; R. Doc. 150, at 8; Assembly Br. 4, and not out of the Secretary's abandonment of the case, *cf. Cameron*, 595 U.S. at 280, the Assembly cannot claim it was previously unaware that its interests would be both implicated and unprotected by the existing parties in the event of a judgment for Plaintiffs. Rather it was simply unaware whether judgment *would* be entered for Plaintiffs. This is not a sufficient proper basis to delay intervention. *See, e.g.*, *Garza v. Cnty. Of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990) (rejecting post-judgment motion to intervene in remedial proceedings in redistricting case where imposition of a remedial plan was "a foreseeable part of a chain of events" and the "[i]ntroduction of a new party at that late stage could have resulted in irreversible prejudicial delay in a case where time was of the essence.").

The Assembly's reliance on *Cameron* is thus misplaced because it did not act "as soon as it became clear," *Cameron*, 595 U.S. at 280, (internal quotation marks omitted) that its interests were implicated and unprotected. Instead, the Assembly simply waited to see whether the judgment was adverse to those interests before getting involved. Moreover, it then waited 18 days after final judgment was entered to even hold a meeting on whether to seek intervention and three full weeks to

23

actually attempt to intervene. App. 131, 135; R. Doc. 137. Even when considered in the context of the remedial proceedings, the Assembly waited nearly two-thirds of the way through the remedial proceeding to seek to intervene. *See United Food*, 36 F. 4th. At 780 (finding proposed intervention one month into a 90-day remedial period to be "extremely late" such that it "weigh[ed] strongly" against intervention, despite the fact that judgment was stayed for 90 days to allow defendants time to decide how to proceed).

These delays are a "far cry" from the two-day interval at issue in *Cameron*. *Id*., at 781. And they reflect precisely the type of dilatoriness this Court has cited to deny intervention in the past. *See id* at 780 (faulting would-be-intervenors for seeking post-judgment intervention when it became clear at least eight months before they sought to intervene that no party would protect their interests in the event of an adverse judgment).

Indeed, the Assembly's unreasonable multiplication of the proceedings, in its post-judgment attempt to assert the rights and privileges of a party in this litigation, demonstrates why post-judgment intervention is "disfavored" in this circuit. *Id*. Had the Assembly

24

intervened to represent its interests at the inception of the litigation, it could have been heard, like any other party throughout the proceedings, regarding what factors the court should consider with respect to the timing of any remedial proceedings.[4] The district court could have taken the Assembly's concerns—and any response by the parties—under advisement *before* issuing its remedial order. Instead, the Assembly actively opposed any participation in this litigation—and reaped significant benefits for doing so, *see infra* part II.D—until an adverse judgment was entered, and then continued to wait *weeks* before demanding to be heard on an emergency basis. As a result of this delay, the Assembly moved to intervene in the district court after it should have been obvious that the court lacked jurisdiction to grant the motion. Then it appealed that denial, resulting in a second appeal from the proceeding below. Then—weeks later—the Assembly filed another motion to intervene in the Secretary's appeal, which this Court denied. The Assembly's numerous non-party filings prejudiced the parties, consumed substantial judicial resources, and could have been avoided entirely had

---

[4] For example, the Court heard testimony at trial from the Secretary of State's office regarding election deadlines that would be affected by any remedial plan. *See, e.g.*, Pls. App. 256-58; R. Doc. 117, at 189-191.

Appellate Case: 24-1171     Page: 33     Date Filed: 05/17/2024 Entry ID: 5394982

the Assembly been more diligent—and less calculating—in its participation below. While the Assembly faults the district court—and by extension, this Court—for rejecting its "numerous pleas" to be heard, Assembly Br. 33, it has only its own actions to blame. The Court should therefore affirm the ruling below on the grounds that the Assembly's motion was untimely.

**B.** **This Court should affirm because the Assembly lacked both standing to intervene and a protectable legal interest in the case.**

This Court should also affirm because the Assembly lacks Article III standing to intervene and does not have a protectable legal interest in the case.

This Court has held that "the Constitution requires that prospective intervenors have Article III standing to litigate their claims in federal court." *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996). Whether a prospective intervenor has standing "is properly measured at the time intervention is sought in the district court." *Dillard v. Chilton County Com'n*, 495 F.3d 1324, 1339 (8th Cir. 2007).

Notably, when the Assembly sought intervention in the district court, it did so for the express purpose defending the existing plan by (1)

26

joining the Secretary's motion to stay, premised on the erroneous contention that Plaintiffs lack a cause of action challenge the enacted plan, and (2) appealing the district court's ruling that the enacted plan violated Section 2. App. 169, 173, 176; R. Doc. 150, at 8 n.5, 12, 15; *see also* Pls. App. 280-81; R. Doc. 148, at 6-7. The Assembly lacked standing to defend the validity of the enacted plan against Plaintiffs' claims, and therefore this Court should affirm the denial of intervention.

The Supreme Court has made clear that for a legislature to have standing to defend the validity of a state statute, state law must expressly authorize the legislature to represent the *State* in federal court. *See Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022). In *Berger* the Court held that North Carolina's legislative leaders could defend the validity of a state statute because "North Carolina has expressly authorized" it. *Id.* at 2202 (citing N.C. Gen. Stat. Ann. § 1-72.2(b) (providing that "'[t]he Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State, by and through counsel of their choice. . . ,' 'shall jointly have standing to intervene on behalf of the General Assembly as a party in

27

any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution.'")).

Unlike in North Carolina, however, North Dakota law does not authorize its legislature to represent the interests of the state. Rather, North Dakota law provides that the North Dakota Attorney General is the exclusive officer authorized to represent the State's interests in federal court. *See* N.D.C.C. § 54-12-01(3) (directing that the attorney general, *inter alia*, "shall . . . '[a]ppear and defend all actions and proceedings against any state officer in the attorney general's official capacity in any of the courts of this state or of the United States."). The Assembly cites N.D.C.C. § 54-35-17, Assembly Br. 31, but that statute only authorizes the Assembly to retain legal counsel to intervene in a suit "when determined necessary or advisable to protect the official interests of the legislative branch." It does not authorize the Assembly to defend the State's interests in legal challenges to the validity of state law. The Assembly's reliance on *Berger* is therefore unavailing.

Instead, *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019), controls here. There, the Supreme Court held that the Virginia House did not have standing because no state law authorized it

28

to represent *the State's interests*. "Authority and responsibility for representing the State's interests in civil litigation, Virginia law prescribes, rest exclusively with the State's Attorney General." 139 S. Ct. at 1951. "Virginia has thus chosen to speak as a sovereign entity with a single voice." *Id.* at 1952. That choice, the Supreme Court explained, "belongs to Virginia, and the House's argument that it has authority to represent the State's interests is foreclosed by the State's contrary decision." *Id.*

Like Virginia, North Dakota law merely authorizes the Assembly to represent its own interests in federal court, not the State's interests. *Cf.* N.D.C.C. § 54-35-17. While the Assembly has asserted an interest in enacting remedial legislation under its state constitutional authority to enact state legislative districts, *see* N.D. Const. Art. IV. § 2, it has no interest in, much less authority over, litigation *defending the enforceability* of a previously enacted plan. *See*, *e.g.*, *Hollingsworth v. Perry*, 570 U.S. 693, 705, (2013) (differentiating between the interest a law's proponents have in *enacting* a law and those the State has in enforcing the law); *id.* at 706-07 (finding that a law's proponents lack

29

standing to defend the law against legal challenges where they "have no role—special or otherwise—in [its] enforcement.").

Had the Assembly sought to intervene for the limited purpose of participating in the remedial process, then perhaps its interest in enacting a remedial plan would have been sufficient to provide Article III standing under *Hollingsworth*.[5] But this Court need not reach that issue, because the Assembly's asserted purpose for intervening was to stay the merits judgment and to challenge it on appeal. App. 169, 173, 176; R. Doc. 150, at 8 n.5, 12, 15; *see also* Pls. App. 280-81; R. Doc. 148 at 6-7. And under Supreme Court precedent and North Dakota law, the Assembly lacks standing to intervene for such purposes. Because this Circuit requires that "prospective intervenors have Article III standing to litigate their claims in federal court," *Mausolf*, 85 F.3d at 1300, the Assembly's motion to intervene must be denied.

The Assembly likewise has no protectable legal interest that supports intervention. Its proffered "redistricting interest" in the remedial proceedings, Assembly Br, at 33-34, was not implicated by its

---

[5] Even then, the Assembly's motion would have been untimely. *See supra* part II.A.

30

motion to stay the liability ruling for purposes of appealing whether Plaintiffs are entitled to bring and succeeded in proving their claims for vote dilution. The Assembly has no interest in defending the merits of the enacted plan because North Dakota has vested that interest exclusively with its Attorney General, *see supra*. The Assembly's reliance on *Berger* is therefore misplaced because North Carolina, unlike North Dakota, specifically authorized its legislative leaders to defend state laws. *Berger*, 142 S. Ct. at 2202.

Finally, to the extent that the Assembly's interests in the remedial process were actually impaired by the denial of intervention, it has only itself—and its unjustifiable delay—to blame. *See supra* part II.A.

## C. The Assembly is adequately represented.

The Assembly's interests are adequately represented. As explained *supra* part II.B, the Assembly *has no interest* in defending the enforceability of the enjoined redistricting map, as it sought intervention to do, because North Dakota law places that interest solely with the Attorney General—the official who is already prosecuting an appeal on behalf of the Secretary. A proposed intervenor that lacks any cognizable

31

interest cannot, by definition, have their interests be inadequately represented.

This is especially so where the existing party is a government official. "Where a proposed intervenor's asserted interest is one that a governmental entity who is a party to the case is charged with protecting, we presume that the government's representation is adequate." *Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023). To overcome that presumption, a proposed intervenor must show an interest different than the public's at large, a "narrower and more parochial" interest than the government's, or make a "strong showing" of inadequacy, "such as by demonstrating that the [Secretary] has committed misfeasance or nonfeasance in protecting the public." *Id.* at 1071-72 (internal quotation marks and citations omitted). But the Assembly has no cognizable interest in defending its previously enacted plan in federal court, it has no parochial interest in any particular configuration of Districts 9 and 15, and it certainly cannot show that the Secretary has exhibited misfeasance or nonfeasance by fully defending the enjoined plan on appeal, or by ensuring that a remedial map was put in place in a timely fashion that avoided any disruption to the 2024

32

election. This Court should thus presume the Attorney General's representation "is adequate." *Thomas*, 76 F.4th at 1071.

### D. The Assembly's intervention would severely prejudice Plaintiffs.

The Assembly's intervention would severely prejudice Plaintiffs. The Assembly spent over nine months vigorously opposing discovery requests served by Plaintiffs on the ground that the Assembly, its members, and its staff were non-parties whose participation would represent an unwarranted intrusion on the legislative process. *See supra* at 4 n.2. As a result, the Assembly and its members succeeded in preventing Plaintiffs from obtaining factual discovery from the Assembly on issues it now actively seeks to contest. *See, e.g.*, Assembly Br. 39-40 (asserting that the district court "incorrectly determined the Assembly's efforts 'did not go far enough to comply with Section 2'") (quoting App. 79; R. Doc. 125, at 38). Indeed, the only legislator from whom Plaintiffs obtained discovery was one the district court found to have waived legislative privilege by voluntarily participating in the litigation—a ruling this Court declined to disturb in the mandamus proceeding. *See In re North Dakota Legislative Assembly*, 70 F.4th 460, 465 (8th Cir. 2023).

Only after judgment was entered—once discovery was no longer possible—did the Assembly demand to be made a party to this action. The Assembly now claims that allowing this case to proceed *without* its participation would unreasonably intrude on the performance of its official duties with respect to redistricting. *See* Assembly Br at 39-45. Because this assertion is fundamentally at odds with its previous position, and because the Assembly accrued specific benefits and Plaintiffs suffered particular harms as a result of that position, the Assembly should be judicially estopped from belatedly taking any position on the merits of Plaintiffs' claims.

Had the Assembly intervened at the beginning of this case, it would have been subject to discovery as a party in the litigation, *see, e.g.*, Fed. R. Civ. P. 26, 30, 33, 35, 36, 37. Moreover, its party status would have had significant implications for its efforts to avoid discovery on the basis of legislative privilege. *See, e.g.*, *In re North Dakota Legislative Assembly*, 70 F.4th at 465 (declining to disturb waiver finding given Rep. Jones's participation in litigation); *Powell v. Ridge*, 247 F.3d 520, 522 (3d Cir. 2001) (holding that legislators have no basis in law to assert legislative privilege against discovery when they voluntarily intervene to assert "the

34

unique perspective of the legislative branch"); *Singleton v. Merrill*, 576 F. Supp. 3d 931, 934 (N.D. Ala. 2021) (finding that state legislators who intervened in redistricting litigation because they were "uniquely positioned" with respect to redistricting legislation waived legislative privilege); *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX, 2023 WL 8183557 (D. Ariz. Sept. 14, 2023) (finding legislative leaders waived privilege by voluntarily intervening to defend lawsuit and challenge key factual assertions by plaintiffs), *mandamus denied sub nom In re Toma*, No. 23-70179, 2023 WL 8167206 (9th Cir. Nov. 24, 2023) (unpublished), *stay denied*, No. 23A452, 2023 WL 8178439, (Nov. 27, 2023).

By delaying its intervention until after judgment issued in this case, the Assembly succeeded in preventing Plaintiffs from using its party status to overcome its assertion of legislative privilege. The Assembly should be precluded from wielding its non-party status as a club to fend off Plaintiffs' discovery requests, only to turn around and demand the benefits of party status when the threat of discovery has passed. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (holding that state was estopped from taking an inconsistent position in a later proceeding, where it had succeeded in persuading a court to accept

Appellate Case: 24-1171    Page: 43    Date Filed: 05/17/2024 Entry ID: 5394982

that party's earlier position, to the unfair detriment of the opposing party). Plaintiffs would be severely prejudiced by the Court permitting the Assembly to intervene now after it previously traded on its nonparty status to Plaintiffs' detriment.

Furthermore, the parties and the citizens of North Dakota would be prejudiced by allowing the Assembly to disrupt, at this late date, either the ongoing administration of the 2024 elections by re-opening the remedial proceedings, *see Purcell*, 549 U.S. 1, or the ongoing appeal of the final judgment, which is fully briefed, *see Turtle Mountain Band of Chippewa Indians v. Howe*, Case No. 23-3655.

## III. This Court should deny the Assembly's appeal of the remedial order for lack of appellate jurisdiction.

Because intervention was properly denied and the Assembly is not a party to the case, this Court lacks appellate jurisdiction over the Assembly's appeal of the remedial order in case No. 24-1171. "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) (citations omitted); *see also Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1006 (8th Cir. 2020) (affirming denial of intervention and denying movant's subsequent motion to stay for lack

36

of appellate jurisdiction on the grounds that movant was not a party to the district court proceeding on appeal). The Court should therefore dismiss the appeal in Case No. 24-1171 for lack of jurisdiction.

## IV. The Assembly's appeal of the remedial order is both meritless and moot.

Even assuming this Court has appellate jurisdiction over the Assembly's appeal of the remedial order—it does not—the Court should affirm the district court's denial of the motion to extend the remedial deadlines. The Assembly had a reasonable time to enact remedial legislation in light of the forthcoming 2024 election deadlines and its arguments to the contrary are both meritless and moot.

### A. The district court afforded the Assembly a reasonable time to enact remedial legislation.

This Court should affirm because the district court appropriately denied the Assembly's eleventh-hour non-party motion to extend the remedial proceedings and granted Plaintiffs' motion to impose a remedial map in light of the non-opposition of the defendant Secretary of State.

"When a federal court declares an existing apportionment scheme [unlawful], it is . . . appropriate, whenever practicable, to afford a *reasonable opportunity* for the legislature to . . . adopt[] a substitute

37

measure rather than for the federal court to devise and order into effect its own plan." *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (emphasis added). The Supreme Court has explained, however, that "when those with legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so, it becomes the unwelcome obligation of the federal court" to devise a remedy. *Id.* (internal citations and quotations omitted).

The remedial order should be affirmed because the district court provided the Assembly with a reasonable time to adopt a remedial plan. The district court permanently enjoined the Secretary's further implementation of Districts 9, 15, 9A, and 9B on November 17, 2023, and provided the Assembly until December 22, 2023—35 days—to adopt a remedial proposal and submit it to the court for review. App. 80; R. Doc. 125, at 39. Notably, the Assembly continues to misunderstand the nature of the December 22 deadline set by the district court. The district court did not *order* the Assembly to adopt a new plan. *See* App. 193; R. Doc. 157, at 2. Federal courts cannot order state legislatures to enact or refrain from enacting laws. The courts can enjoin those laws, but they cannot order their passage or rejection. Nor was December 22 a deadline

after which the Assembly was prohibited from adopting and filing with the district court a remedial plan for approval. Rather it served as a deadline for the *court* after which it would no longer stay its hand and instead would undertake to impose a court-ordered plan in the absence of legislative action. The enacted plan was permanently enjoined; the district court was obligated to ensure that a lawful plan is in effect in advance of the existing, relevant statutory election deadlines. As such, the district court provided a reasonable period of time for the Assembly to adopt a plan—if it wished—and in the absence of a legislatively adopted plan, ordered a remedial map into place. Finally, the district court did not order the defendant Secretary to enact a remedial plan via executive fiat. It simply acknowledged that if there was a legislatively enacted remedial plan by December 22, the Secretary—as the defendant in and party to the case—could submit that map to the court for review.

Moreover, the period provided by the Court was more than reasonable. Indeed, it *exceeded* the time most courts provide legislative bodies to adopt remedial plans. For example, the Eighth Circuit affirmed a district court's imposition of a Section 2 remedial plan that provided the government half as much time as this Court has afforded the

39

Assembly here. *See Williams v. City of Texarkana*, 861 F. Supp. 756, 767 (W.D. Ark. 1992) (issuing liability determination on Sept. 29, 1992, and providing until Oct. 15, 1992, to submit remedial plans), *aff'd*, 32 F.3d 1265, 1268 (8th Cir. 1994) (affirming district court's imposition of remedial map). Following the Supreme Court's decision in *Allen v. Milligan*, 599 U.S. 1 (2023), last year, the district court provided the Alabama Legislature 31 days—4 fewer than this Court has provided here—to adopt a remedial plan, and the Supreme Court denied a stay of the subsequent remedial order. Order, *Caster v. Allen,* No. 2:21-cv-01536-AMM (N.D. Ala. June 20, 2023), Doc. 156, *stay denied*, *Allen v. Milligan*, 144 S. Ct. 476 (2023) (Mem.). Courts across the country routinely provide less time than the district court has afforded the Assembly here. *See, e.g.*, *Robinson*, 37 F.4th at 232 (5th Cir. 2022) (affirming order providing 14 days); *Calvin v. Jefferson Cnty. Bd. of Comm'rs*, 172 F. Supp. 3d 1292, 1326 (N.D. Fla. 2016) (providing 16 days); *Harris v. McCrory*, 159 F. Supp. 3d 600, 627 (M.D.N.C. 2016) (providing 14 days); *Larios v. Cox*, 300 F. Supp. 2d 1320, 1356 (N.D. Ga. 2004), *aff'd*, 542 U.S. 947 (2004) (providing 19 days).

Next, the Assembly asserts—after raising it for the first time in reply below—that under *Covington v. State*, 267 F.Supp.3d 664 (M.D. N.C. 2017), it ought to have been allowed, alternatively, until its next legislative session, three months, or up to a year to enact remedial redistricting legislation. Assembly Br. 41-45. Given that the judgment in *Covington* was handed down immediately after the November 2016 election—and thus a full two years before the next relevant election, *see id.*—it is unsurprising that it was "practicable" there to allow the legislature additional time to engage in remedial proceedings. Moreover, much of the delay was due to the fact that the judgment was stayed. *See id.* By contrast, the judgment here was handed down mid-cycle with election deadlines beginning less than a month-and-a-half later. And both the district court and this Court denied motions to stay the judgment pending appeal. App. 180-85; R. Doc. 153; Add. 3-8; *see also* Order, Case No. 23-3655 (Dec. 15, 2023). In light of these differences, it was entirely reasonable for the district court to set and stick to the December 22 deadline to act absent legislative action.

Moreover, the Assembly's inconsistent positions as to the relevant deadlines undermine its contention that further delay in enacting a

41

remedial plan was justified. In its emergency motion to extend the remedial schedule, the Assembly proposed that the district court delay an additional *49 days* beyond the deadline the court set for itself to ensure that a lawful plan was in effect with minimal impact on the 2024 election. The Assembly suggested that so long as a map was in place by April 8, the state and counties would "be able to successfully administer an election." App. 196; R. Doc. 157, at 5. But the Assembly had previously joined the Secretary's arguments in support of a stay in the district court, asserting that a remedial map needed to be in effect by December 31 to minimize the impact on the 2024 election. App. 173; R. Doc. 150, at 12. And the Assembly itself affirmatively argued in support of a stay that it was too close to the January 1 opening of the candidate filing period for a new map to be put into place without causing "substantial chaos and confusion." Pls. App. 278; R. Doc. 148, at 4.

After this Court denied the Secretary's stay request, the Assembly promptly changed its tune, suggesting that "April 8th is the hard deadline for the state and counties to be able to successfully administer

an election."[6] App. 196; R. Doc. 157, at 5. Because the Assembly's position on the appropriate deadlines for the remedial process appeared to depend entirely on whether it was opposing or seeking relief, the district court did not act unreasonably in sticking to its original schedule to ensure relief was in place for the 2024 elections.

The Assembly's contention that it was not afforded a reasonable opportunity to propose a remedy is unfounded. Apparently, the Assembly bet that this Court would stay the district court's decision, so it did not act until it was too late to do so. That was the Assembly's gamble to make, but it did not justify delaying the remedy in this case nor did it render the 35-day period the district court provided "unreasonable."

## B. The Assembly's appeal of the remedial order is moot.

Its disingenuousness about the source of this purported deadline notwithstanding, *see supra* at n.6, even the Assembly asserted below that the absolute latest that a remedial plan could be enacted in advance of

---

[6] Notably, the Assembly represented this to the district court as the position of the Secretary, despite the fact that just days before, the Secretary had opposed the Assembly's similar request in this Court and explained that the Assembly was mischaracterizing the Elections Director's testimony. *See* Secretary's Howe's Response to Motion to Extend Deadline at 3, *Turtle Mountain Band of Chippewa Indians v. North Dakota Legislative Assembly*, No. 23-3697 (8th Cir. Dec. 20, 2023).

43

the 2024 election was April 8, 2024. App. 196; R. Doc. 157, at 5. It is now May 16, 2024. Because the Assembly did not enact and the Defendant Secretary did not submit for review any proposed remedial map before its own acknowledged "hard deadline," its motion for an extension of the remedial deadlines is moot.[7] *See Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018) ("A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (internal quotation marks omitted).

## V. The Assembly waived any challenge to the remedial map.

For the first time on appeal, the Assembly asserts that the remedial map imposed by the district court to remedy the Section 2 violation proved at trial, without objection from the Defendant Secretary of State, constitutes a racial gerrymander. Because the Assembly never raised this

---

[7] The Assembly suggests that Districts 9 and 15 are not on the 2024 ballot, and as such "there is still ample time" to implement a remedial plan. Assembly Br. 49-50. This assertion misunderstands the district court's injunction, as well as the 2024 North Dakota elections calendar. *See* App. 80; R. Doc. 125, at 39 ("The first election for the state legislative positions in the remedial district shall occur in the November 2024 election."); North Dakota Secretary of State, *North Dakota Election Calendar 2024* at 5, https://perma.cc/3EPA-43EV.

44

argument below, it is forfeited on appeal. *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 770 (8th Cir. 2014) ("As a general rule, we do not consider arguments or theories on appeal that were not advanced in the proceedings below.") (internal citation omitted).

## VI. The Assembly's complaints about the remedial map are meritless.

Even if the argument was not waived, the Assembly's contention that the remedial map is a racial gerrymander is baseless. The Assembly asserts, without any reference to the trial record, or indeed any reference to any evidence whatsoever, that "the democratic process, federalism, and the separation of powers were cast aside in favor of a map designed solely upon racial considerations." Assembly Br. 46. While this sort of hyperbole may play well for a sound bite, litigants in federal court are expected to tether their assertions to actual facts and the Assembly has none.

As explained at length in Plaintiffs brief in the merits appeal, there is no evidence in the record—and the district court did not find—that race predominated in the configuration of Plaintiffs' illustrative maps. The Secretary's expert Dr. Hood testified that he "ha[d] no evidence that plaintiffs' demonstrative plans are a racial gerrymander." Pls. App. 234-

45

35; R. Doc. 117, at 167-168. Moreover, he testified that Plaintiffs' illustrative districts did not subordinate traditional districting principles to racial considerations. Pls. App. 230-31; R. Doc. 117, at 163-164. Additionally, Dr. Hood agreed—and the district court found—that *nonracial* shared interests between the Turtle Mountain and Spirit Lake Tribes motivated their proffered districts' design. *See* Pls. App. 234; R. Doc. 117, at 167; *see also* App. 60; R. Doc. 125, at 19. These included "shared representational interests, socioeconomic statuses, and cultural values." App. 60-61; R. Doc. 125, at 19-20. In particular, the court credited testimony of the Tribal Nations that "the Tribes often collaborate to lobby the Legislative Assembly on their shared issues, including gaming, law enforcement, child welfare, taxation, and road maintenance, among others." App. 60; R. Doc. 125, at 19. The Assembly makes no effort to explain how the district court erred in finding that these *nonracial* justifications gave rise to the design of the remedial map.[8]

---

[8] The Assembly continues to disingenuously and misleadingly suggest that one citizen who spoke at a redistricting committee meeting—Scott Davis—unilaterally altered the Turtle Mountain Band's position in this case. The Assembly quotes his testimony extensively in its statement of the case, Assembly Br. 16-18, and relies on his "purported"

46

Instead, the Assembly asserts that because the remedial map was proposed by Plaintiffs, and places two Tribal Nations in a single legislative district, it must have been drawn entirely based on race. But as the district court found, Plaintiffs' illustrative districts do "not appear more oddly shaped than other districts, and both proposed districts are reasonably compact." App. 60; R. Doc. 125, at 19. And to the extent the Assembly criticizes the boundaries of the remedial map, their objection is to the shape and appearance of *Benson County*—which is bounded by water. The district court did not racially gerrymander by imposing a map that follows county boundaries.

---

representation of Turtle Mountain to assert that the remedial map—which was proposed by Turtle Mountain, along with the other Plaintiffs in this case—"was not desirable" to Turtle Mountain, *id.* at 47. Plaintiffs have repeatedly made clear to the Assembly that Turtle Mountain is a sovereign nation with an elected government; that it speaks through its Chair and Tribal Council; and that only Turtle Mountain Chairman Azure, Spirit Lake Chairwoman Street, and their duly authorized representatives, speak for the Tribal Nations with respect to this litigation and the remedial process. *See, e.g.*, Appellees' Response in Opposition to Motion for Extension of Deadline, *Turtle Mountain Band of Chippewa Indians v. North Dakota Legislative Assembly* at 13-14 n.5, No. 23-3697 (8th Cir. Dec. 20, 2023). Yet the Assembly continues to file documents in this Court that ignore the testimony submitted by the Tribal Nations and their duly authorized representatives, in favor of a single citizen whose testimony supports the Assembly's position. And it continues to suggest that testimony was made on behalf of the Turtle Mountain Band, despite knowing it to be untrue.

47

In *Milligan*, the Supreme Court held that there was "exceedingly thin" evidence of racial predominance where the proffered maps adhered to traditional districting principles and where the State's expert admitted that his "analysis of any race predominance in [plaintiffs' maps] was pretty light." 599 U.S. at 31-32 (internal quotation marks omitted). Here, the Assembly cites no evidence that race was considered at all, let alone that it predominated, and the Secretary's own expert testified that he had *no evidence* to suggest it had. Pls. App. 230-231; R. Doc 117, at 163-164.

Nonetheless, the Assembly faults the district court because the court supposedly "did not dispute that Plaintiffs' proposed maps constituted a racial gerrymander." Assembly Br. 46. But it is unsurprising that the district court did not "dispute" this in granting Plaintiff's proposed remedial map, because the Assembly did not object to the map as a racial gerrymander below. Instead, it appears this assertion rests entirely on a mischaracterization of a single footnote in the district court's trial decision. The district court observed that "even assuming race was the predominate motivating factor in drawing the [illustrative] districts," strict scrutiny would be satisfied because

48

remedying a Section 2 violation was a compelling justification. App. 61; R. Doc. 125, at 20 n.3. That observation is consistent with Supreme Court precedent. *See Milligan*, 599 U.S. at 30-31; *Cooper v. Harris*, 581 U.S. 285, 292 (2017) ("[The Supreme] Court has long assumed that one compelling interest is complying with operative provisions of the Voting Rights Act of 1965.").

Indeed, the Assembly concedes that compliance with Section 2 is a compelling interest that would justify using race to draw a legislative district. Assembly Br. 47. Yet, confusingly, the Assembly appears to contend that the district court did not have a sufficiently "strong basis in evidence" to find that the remedial map was necessary to comply with Section 2, despite having conducted a full trial on the merits and found conclusively that Section 2 was violated. Given that the Assembly appears to have abandoned its appeal of the district court's merits ruling in the wake of this Court's denial of its motion to intervene in the Secretary's appeal, *compare* Assembly Mot. to Intervene, Case No. 23-3655 (Dec. 18, 2023) *with* Movants' Designation & Statement of Issues, Case Nos. 23-3697 and 24-1171 (Feb. 13, 2024); *and see* Order Denying

49

Intervention, Case No. 23-3655 (Jan. 26, 2024), it is unclear on what basis it seeks to challenge the sufficiency of the evidence at trial.

Because the Assembly's complaints about the remedial map are meritless, this Court should affirm.

## CONCLUSION

This Court should affirm the district court's denial of intervention in Case No. 23-3697 and dismiss Case No. 24-1171 for lack of appellate jurisdiction.

May 16, 2024

Respectfully submitted,

Michael S. Carter
Matthew Campbell
Allison Neswood
NATIVE AMERICAN RIGHTS FUND
250 Arapaho Ave.
Boulder, CO 80302
(303) 447-8760
carter@narf.org
mcampbell@narf.org
neswood@narf.org

Samantha B. Kelty
NATIVE AMERICAN RIGHTS FUND
950 F St. NW, Ste. 1050
Washington, DC 20004
(202) 785-4166
kelty@narf.org

Bryan L. Sells
THE LAW OFFICE OF BRYAN
   L. SELLS

*/s/ Molly E. Danahy*
Mark P. Gaber
Molly E. Danahy
Melissa Neal
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegal.org
mdanahy@campaignlegal.org
mneal@campaignlegal.org

Timothy Q. Purdon*
ROBINS KAPLAN, LLP
1207 West Divide Ave., Ste. 200
Bismarck, ND 58501
(701) 255-3000
tpurdon@robinskaplan.com

50

P.O. Box 5493
Atlanta, GA 31107
(404) 480-4212
bryan@bryansellslaw.com

*Counsel for Appellees*
*\*Counsel for Appellees Turtle Mountain Band of Chippewa Indians*
*and Spirit Lake Nation*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) as it uses the proportionally spaced typeface of Century Schoolbook in 14-point font.

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) as it contains 10,381 words, excluding parts of the brief exempted by Fed. R. App. P. 27(d)(2).

The electronic version of the foregoing Brief submitted to the Court pursuant to Eighth Circuit Local Rule 28(A)(d) was scanned for viruses and that scan showed the electronic version of the foregoing is virus free.

Dated this 16th day of May, 2024.

/s/ Molly E. Danahy
Molly E. Danahy
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2024, I electronically submitted the foregoing to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit for review by using the CM/ECF system and that ECF will send a Notice of Electronic Filing (NEF) to all participants who are registered CM/ECF users.

/s/ Molly E. Danahy
Molly E. Danahy
*Counsel for Plaintiffs-Appellees*

Appellate Case: 24-1171    Page: 61    Date Filed: 05/17/2024 Entry ID: 5394982