# United States Court of Appeals for the Eighth Circuit

TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, SPIRIT LAKE TRIBE, WESLEY DAVIS, ZACHERY S. KING, COLLETTE BROWN,

*Plaintiffs-Appellees*,

v.

MICHAEL HOWE, in his official capacity as
Secretary of State of North Dakota,

*Defendant-Appellee*

v.

NORTH DAKOTA LEGISLATIVE ASSEMBLY,

*Movant-Appellant.*

On Consolidated Appeal of Order Denying Assembly's Motion to Intervene and Order Denying Assembly's Motion for Extension of Time and Adopting Plaintiffs' Proposed Plan 2 as Remedial Plan to the United States District Court for the District of North Dakota
(No. 3:22-cv-00022)

## BRIEF OF DEFENDANT-APPELLEE MICHAEL HOWE

David R. Phillips
Special Assistant Attorney General
dphillips@bgwattorneys.com
300 West Century Ave., P.O. Box 4247
Bismarck, ND 58502

Philip Axt
Solicitor General
pjaxt@nd.gov
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505

*Counsel for Defendant-Appellee*

Appellate Case: 24-1171     Page: 1     Date Filed: 05/21/2024 Entry ID: 5395837

## SUMMARY OF THE CASE AND ORAL ARGUMENT

Defendant-Appellee Michael Howe, in his official capacity as Secretary of State of North Dakota ("Secretary"), agrees with many of the arguments of Movant-Appellant North Dakota Legislative Assembly ("Assembly").

The Secretary agrees the Assembly should have been permitted to intervene to protect its unique interests. While the Secretary defended North Dakota's 2021 redistricting plan through the end of trial, the interests of the Assembly and the Secretary have diverged at the remedial and appellate stages. Under the North Dakota Constitution, the Secretary does not have authority to modify the State's election maps—that authority lies solely with the Assembly. Conversely, the duty to administer the upcoming 2024 elections lies solely with the Secretary.

The Secretary also agrees the Assembly was not provided a reasonable opportunity to adopt a remedial redistricting plan after the district court invalidated portions of the State's enacted map and then imposed its own by decree.

However, the Secretary respectfully disagrees that the court-imposed map does not need to be used for the 2024 elections. The Secretary understands the applicable court orders and law to require remedial Districts 9 and 15 to appear on the ballot in the 2024 primary and general elections, and it is too late to change the map without substantial confusion for voters, candidates, and election officials.

The Secretary does not request oral argument but will participate if scheduled.

ii

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND ORAL ARGUMENT ...................................... ii

TABLE OF AUTHORITIES ...................................................................iv

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT ...................................................................................2

I.    The District Court Erred in Denying the Assembly's Motion to Intervene ...................................................................................2

II.   The District Court Failed to Provide the Assembly a Reasonable Opportunity to Adopt a Remedial Redistricting Plan ...............................5

III.  Remedial Districts 9 and 15 Should Remain on the 2024 Ballot Regardless of the Outcome of the Appeals .................................................10

CONCLUSION ..................................................................................17

Appellate Case: 24-1171     Page: 3     Date Filed: 05/21/2024 Entry ID: 5395837

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

*Berger v. North Carolina State Conference of the NAACP,*
    597 U.S. 179 (2022)..................................................................................3, 4, 5

*Chiglo v. City of Preston,*
    104 F.3d 185 (8th Cir. 1997) ...........................................................3

*Kelsh v. Jaeger,*
    641 N.W.2d 100 (N.D. 2002) .......................................................12

*Paulson v. Meier,*
    232 F.Supp. 183 (D.N.D. 1964) .......................................13, 14, 15

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006)...........................................................................16

*Reynolds v. Sims,*
    377 U.S. 533 (1964)......................................................................16

*Upham v. Seamon,*
    456 U.S. 37 (1982).....................................................................9, 17

*Wise v. Lipscomb,*
    437 U.S. 535 (1978).....................................................................4, 7

**N.D. Constitution**

N.D. Const. art. IV § 2 ...............................................................................3, 12

N.D. Const. art. V § 2 ..................................................................................3

N.D. Const. art. IV § 3 ...............................................................................11

**Statutes**

52 U.S.C. § 20302(a)(8)........................................................................15, 16

iv

N.D.C.C. § 16.1-01-01 ...................................................................................3, 8

N.D.C.C. § 16.1-07-04 ...................................................................................15, 16

N.D.C.C. § 16.1-07-15 ...................................................................................15

N.D.C.C. § 16.1-07-23 ...................................................................................15, 16

N.D.C.C. § 16.1-07-30(1) ...............................................................................15

N.D.C.C. § 16.1-11-01 ...................................................................................11

N.D.C.C. § 16.1-11-06 ...................................................................................15

N.D.C.C. § 16.1-11-15 ...................................................................................15

N.D.C.C. § 54-03-01.15(1) .............................................................................12

## **Rules**

Fed. R. Civ. P. 24(a)(2) ..................................................................................2

v

# SUMMARY OF ARGUMENT

The Secretary agrees with the Assembly that the district court erred by denying the Assembly's motion to intervene at the remedial stage of this litigation. The Assembly is the sole State body with constitutional authority to modify the State's election maps. The Secretary has no constitutional authority to re-draw the State's election maps and consequently cannot protect the State's interest in drawing a remedial map after the district court invalidated the duly-enacted map. Following the district court's invalidation of the State's duly enacted map, the Assembly should have been permitted to intervene to protect the State's interest in having an opportunity to re-draw and enact its own remedial map before one was forced upon it by the court.

The Secretary also agrees with the Assembly that the district court erred by failing to give the Assembly a reasonable opportunity to adopt a remedial map before imposing one of its one. The district court gave the Assembly and the Secretary (though the Secretary has no redistricting authority) only 35 days to develop, enact, and submit a remedial redistricting plan during a holiday period while the Assembly was out of session. Under those circumstances, the remedial opportunity provided by the district court was not reasonable.

The Secretary respectfully disagrees with the Assembly's statement regarding Districts 9 and 15 not needing to be on the ballot for the 2024 elections. Even

1

though the Secretary agrees with the Assembly's concern that the court-imposed remedial map appears to be the product of unlawful racial gerrymandering, the Secretary believes the district court's orders and applicable law require that primary and general elections must be held in 2024 for Districts 9 and 15 using the court-imposed remedial map. Based on the Secretary's understanding of his duties, the primary elections for Districts 9 and 15 are already well underway and it is too late to change the 2024 election map without causing substantial confusion and uncertainty for voters and election officials.

## **ARGUMENT**

## I.  **The District Court Erred in Denying the Assembly's Motion to Intervene**

The Secretary agrees with the Assembly that the district court erred in denying the Assembly's motion to intervene.  Under the Federal Rules of Civil Procedure, a court must permit intervention as of right to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  As this Court has described, a three-factor test is used to determine whether a person is entitled to intervene as of right:

> Under Rule 24(a)(2), a person is entitled to intervene as of right if: (1) he has a cognizable interest in the subject matter of the litigation; (2) the interest may be impaired as a result of the litigation; and (3) the interest is not adequately protected by the existing parties to the

2

litigation. [] The intervenor must satisfy all three parts of the test. The motion to intervene must also be timely. [] We review de novo the district court's determination of the three-factor test, but the timeliness determination we review for abuse of discretion.

*Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997) (citations omitted).

In this case, the Secretary agrees that the Assembly meets all three factors and is entitled to intervention as of right. Pursuant to the North Dakota Constitution, the Assembly has the sole authority to establish legislative districts within the state. N.D. Const. art. IV, § 2. The Secretary is a constitutional officer of North Dakota under the executive branch of state government who serves as the supervisor of State elections. N.D. Const. art. V, § 2; N.D.C.C. § 16.1-01-01. The Secretary's authority over elections is limited to administering the State's election laws as enacted by the Assembly, and the Secretary does not have any constitutional authority to change the State's elections laws or to redraw the State's redistricting map.

The Secretary agrees that the Assembly has a cognizable interest in the subject matter of this litigation, and thus satisfies the first factor. As provided by the Supreme Court in *Berger v. North Carolina State Conference of the NAACP*, "when a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge." 597 U.S. 179, 191 (2022). The Assembly has a cognizable interest in *developing* redistricting legislation that is distinct from the Secretary's interest in *administering* that redistricting legislation.

3

The Assembly's unique interest became manifest when the district court found the election map at issue to violate Section 2 of the Voting Rights Act, which necessarily required giving the State a reasonable opportunity to develop and enact a new map. *See Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) ("When a federal court invalidates a state election map, "it is … appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements."). Under the North Dakota Constitution, only the Assembly—not the Secretary—has the authority to develop and enact redistricting legislation for the State.

The Secretary also agrees that the Assembly satisfies the second factor, as the Assembly's interest in this litigation was necessarily impaired by the district court's finding that the redistricting legislation at issue violates Section 2 and setting an unreasonably short deadline for the Assembly to develop and enact a new redistricting map under the circumstances of the case.

On the third factor, the Secretary also agrees the Assembly's interest in developing redistricting legislation is no longer adequately protected by the existing parties to the litigation. Federal courts should rarely question that "a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Berger*, 597 U.S. at 191. "To hold otherwise would not only evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials. … It

4

would encourage plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court." *Id*.

As described above, the Secretary is unable to protect the Assembly's interest (nor the State's interest) in developing remedial redistricting legislation because the Secretary has no authority to develop such legislation. Only the Assembly can defend that interest, as it has sole authority under the State Constitution to develop and enact redistricting legislation. Although the Secretary has defended the validity of the redistricting map enacted by the Assembly at issue in this case—and he continues to defend the validity of that map on appeal—his reasons and authority for doing so are distinct from those of the Assembly.

The district court found the State's as-enacted map violated Section 2 of the VRA, the Secretary has made clear that he does not speak for the Assembly or purport to defend its unique interests. *See, e.g.,* 8th Cir. Dkt. No 23-3655 (Entry ID 5344314) (Mtn. for Stay) at 11 n.6. The district court erred in denying the Assembly's motion to intervene after invalidating the State's election map.

## II. The District Court Failed to Provide the Assembly a Reasonable Opportunity to Adopt a Remedial Redistricting Plan

The Secretary also agrees that the Assembly was not provided a reasonable opportunity to adopt a remedial redistricting plan after the district court made its determination that the election map at issue violated Section 2 of the VRA. In its judgment on November 17, 2023, the district court stated in relevant part:

5

> The Secretary is permanently enjoined from administering, enforcing, preparing for, or in any way permitting the nomination or election of members of the North Dakota Legislative Assembly from districts 9 and 15 and subdistrict 9A and 9B. The Secretary and Legislative Assembly shall have until December 22, 2023, to adopt a plan to remedy the violation of Section 2. The Tribes shall file any objections to such a plan by January 5, 2024, along with any supporting expert analysis and potential remedial plan proposals. The Defendant shall have until January 19, 2024, to file any response.

App.82, R.Doc.126 at 2. As such, the district court allowed the Secretary and the Assembly (though as discussed *supra*, only the Assembly had authority), a mere 35 days to develop, enact, and submit a remedial redistricting plan during the Thanksgiving and winter holiday period.

The Assembly, which was at that time out of session, thereafter re-formed its redistricting committee and held a series of public sessions to develop an alternate map. *See* Assembly Br. at 13-22. The Assembly also moved to intervene in the district court and moved for an extension of time to file a remedial plan until February 9, 2024, which the district court denied. Add.10, App.286, R.Doc.164. In denying the Assembly's motion on January 8, 2024, the district court reasoned:

> The Secretary was provided a reasonable time, until December 22, 2023, to propose a remedial plan. The Plaintiffs are correct that the Court did not order the Secretary (or the Legislative Assembly) to adopt a new plan by that date; it provided a reasonable opportunity to the Secretary to propose his own plan to correct the proven Section 2 violation. The law requires nothing more and nothing less. But if the Secretary elects to not offer a proposed remedial plan (as is the case here), then it becomes the 'unwelcome obligation of the federal court' to devise a remedy. Id. (internal citations and quotations omitted). And that is where we find ourselves now. On this record, an extension of

6

time is not warranted because the Secretary was provided a reasonable opportunity to propose a remedial plan, and an extension has not been requested by either party to this case.

Add.10, App.286, R.Doc.164 at 2 (quotation and citation in original).

The district court's determination that 35 days was a reasonable opportunity for the Assembly to develop, enact, and submit remedial redistricting legislation was incorrect under the circumstances presented by this case.

Developing and then enacting redistricting legislation is a complicated, time-consuming process that requires balancing a wide host of constitutional and statutory issues—and if done incorrectly will result in litigation that imposes significant costs and confusion upon the State (though that result often follows even when it is done correctly). There are several aggravating factors in this case: North Dakota does not have a full-time legislature, the Assembly's biennial regular session was already adjourned by the date of the district court's judgment, and the window provided by the district court to develop and enact a new election map fell over the winter holiday period. To be sure, courts may have found similar windows of time to constitute a "reasonable opportunity" in other cases, but the Secretary agrees with the Assembly that the window provided here was not a "reasonable opportunity" under the circumstances of this case. *Cf. Wise v. Lipscomb*, 437 U.S. 535, 540 (1978).

Further, the remedial order seems to indicate the district court confused the roles of the Secretary and the Assembly in North Dakota elections. The remedial

7

order states that the "Secretary was provided a reasonable opportunity to propose a remedial plan." Add.10, App.286, R.Doc.164 at 2. However, as described *supra*, only the Assembly, not the Secretary, may propose redistricting legislation. The Secretary lacks constitutional authority to modify the State's election map.

One additional point to clarify regarding the district court's remedial order. The district court granted Plaintiffs' motion to impose proposed plan 2, in part, by suggesting the Secretary's non-objection to Plaintiffs' motion was an admission that the motion was well taken. Add.10, App.286, R.Doc.164 at 3. The district court was incorrect to suggest the Secretary's non-objection indicated agreement with that court-imposed map. Rather, it was a reflection of the difference in duties and authorities of the Secretary and the Assembly. The Secretary, as the supervisor of elections in North Dakota (N.D.C.C. § 16.1-01-01), has a duty to ensure that the State's elections are administered in an organized and transparent manner. That duty brings with it a strong need for finality on the election map to be used, especially when, as here, the primary elections were mere months away and candidate petitioning to be on the ballot had already started.

When the district court entered its remedial order, the situation was that: (a) the Secretary was enjoined from preparing for elections in the invalidated districts or "in any way" permitting the nomination of candidates in those districts (which necessarily included neighboring districts), *see* App.82, R.Doc.126 at 2; (b) the

8

Secretary's motions for a stay pending appeal had been denied by both the district court and this Court, *see* R.Doc. 153 and 8th Cir. Dkt. No. 23-3655, Entry ID 5344823; (c) the clock for candidates to begin gathering petitions to be on the ballot had already started running; and (d) the Secretary lacked constitutional authority to propose any redrawing of the map himself.

Administering an election foundationally requires a map upon which the elections will be held. Everything else hinges upon that. The district court put the Secretary in a very difficult position by waiting five months to issue its order, enjoining election preparation using the as-enacted map on the eve of important deadlines, and then refusing to stay its injunction through the 2024 election so that the Secretary could have a meaningful opportunity for appellate review. Consequently, the Secretary's non-objection at that juncture was a reflection of his need for finality with respect to the election map to be utilized for the 2024 elections, and not a reflection of any approval for the district court's remedy nor for any court-imposed map beyond the 2024 elections. *Cf. Upham v. Seamon*, 456 U.S. 37, 44 (1982) (even if a court improperly imposes its own map, the realities of administering a fast-approaching election may require "allow[ing] the election to go forward in accordance with the [improper, court-imposed] schedule").

Appellate Case: 24-1171     Page: 14     Date Filed: 05/21/2024 Entry ID: 5395837

### III. Remedial Districts 9 and 15 Should Remain on the 2024 Ballot Regardless of the Outcome of the Appeals

As a final point, the Assembly appears to interpret the district court's orders and applicable law to mean remedial Districts 9 and 15 need not be on the ballot in 2024, and it suggests the district court's orders will not have practical effect until the 2026 election cycle, concluding "there is still ample opportunity for this Court to correct the District Court's numerous errors." Assembly Br. at 49-50.

While the Secretary agrees the district court made numerous errors that should be corrected by this Court (*see generally* 8th Cir. Dkt. No. 23-3655, Entry IDs 5357033, 5381370), the Secretary respectfully disagrees with the Assembly's interpretation of the relevant court orders and applicable law with respect to the 2024 election cycle and the remedial districts.

It is the Secretary's understanding that elections must be held in 2024 for state legislators in the court-imposed remedial Districts 9 and 15.[1] In addition to permanently enjoining the Secretary from "administering, enforcing, preparing for, or in any way permitting the nomination or election of members of the North Dakota Legislative Assembly from districts 9 and 15," the district court's judgment explicitly stated, "[t]he first election for the state legislative positions in the remedial

---

[1] The court-imposed remedial District 9 is composed of portions of former Districts 9, 14, and 15 from the State's 2021 plan. The court-imposed remedial District 15 is composed of portions of former Districts 9 and 15 from the State's 2021 plan.

10

district shall occur in the November 2024 election." R.Doc. 126 at 2 (emphasis added).[2] Both the district court (R.Doc. 153) and this Court (8th Cir. Dkt. No. 23-3655, Entry ID 5344823) denied the Secretary's motions to stay the judgment pending appeal. Thus, the Secretary understands that he is court-ordered to carry out state legislative elections in Districts 9 and 15 in the 2024 election cycle according to the remedial map.

Moreover, even if the applicability of the district court's order to hold elections for the remedial districts could be subject to reasonable debate, the Secretary believes that the court-ordered implementation of proposed plan 2 substantially altered the boundaries of former Districts 9, 14, and 15, such that elections must now be held in 2024 in those districts under the State Constitution.

The Assembly is correct to note that the North Dakota Constitution establishes four-year terms and requires the State to "establish by law a procedure whereby one-half of the members of the senate and one-half of the members of the house of representatives, as nearly as is practicable, are elected biennially." Assembly Br. at 50 (citing N.D. Const. Art. IV § 3). And, by statute, the State has provided that legislators from odd-numbered districts (including Districts 9 and 15) were elected

---

[2] The district court's judgment does not mention the 2024 primary election, only the general election. However, in order to comply with the requirement to run in the general election in the remedial districts in November 2024, candidates must be in the primary election, which takes place on June 11, 2024. N.D.C.C. § 16.1-11-01.

Appellate Case: 24-1171     Page: 16     Date Filed: 05/21/2024 Entry ID: 5395837

in 2022 to serve four-year terms that will not expire until 2026. Assembly Br. at 50 (citing N.D.C.C. § 54-03-01.15(1)).

However, that does not mean that individuals elected in 2022 can serve their entire four-year terms representing Districts 9 and 15 when the boundaries for those districts changed significantly mid-term. In *Kelsh v. Jaeger*, the North Dakota Supreme Court considered whether truncating a State Senator's term in that context violated the North Dakota Constitution. 641 N.W.2d 100 (N.D. 2002). The court held that "[w]hen reapportionment results in a substantial constituency change, the constitutional requirement that a [legislator] be elected *from* a district may justify truncating an incumbent [legislator's] term to give the electorate in the newly drawn district an opportunity to select a [legislator] *from* that district." *Id.* at 110 (emphases added); *see also* N.D. Const. Art. 4, § 2 (State legislators in both the House and Senate must be elected "from" their districts).

In the present case, the court-imposed map substantially changed the constituencies of Districts 9, 14, and 15, and a new election must therefore be held for those districts even though it truncates the incumbents' terms of office for Districts 9 and 15. The Secretary believes that is also consistent with the express language of the district court's orders. It should be noted, however, that the

12

candidates running in remedial Districts 9 and 15 in 2024 are all running for two-year unexpired terms, not full-year terms.[3]

The Secretary agrees with the Assembly that the court-imposed map appears to be an unconstitutional racial gerrymander. Assembly Br. at 46-49. And the Secretary continues to challenge the district court's invalidation of the as-enacted election map on appeal to this Court. *See* 8th Cir. Dkt. No. 23-3655. However, in the absence of a stay pending appeal, the Secretary must comply with the district court's order to hold 2024 elections in the court-imposed remedial districts. Consequently, even though it is possible that the Secretary and/or the Assembly may prevail in their appeals, and the legislators elected in 2024 from remedial Districts 9 and 15 may ultimately be found to have been selected through an unlawful or unconstitutional process, the Secretary's position is that at this point in the 2024 election cycle it is too late to make fundamental changes.

The decision of the North Dakota district court in *Paulson v. Meier* is instructive in this regard. *See* 232 F.Supp. 183 (D.N.D. 1964). In that case, decisions from the U.S. Supreme Court in June of 1964 ruled North Dakota's system of apportioning members to the Assembly unconstitutional because it was based primarily on area, rather than population. *Id.* at 184-85. Accordingly, the district

---

[3] *See* North Dakota Secretary of State, *2024 Primary Election Contest/Candidate List*, available at https://vip.sos.nd.gov/candidatelist.aspx?eid=329 (accessed Apr. 16, 2024).

Appellate Case: 24-1171     Page: 18     Date Filed: 05/21/2024 Entry ID: 5395837

court struck down the State's 1963 legislative plan, as well as the State's prior legislative plan, finding "that there is no constitutionally valid legislative apportionment law in existence in the State of North Dakota at this time." *Id.* at 187. However, the court also found that "reasonable and adequate time is not now available— and has not been available since the Supreme Court decisions of June 15—within which [the court] could formulate a redistricting and reapportioning plan" for the upcoming primary and general elections. *Id.* at 188.

The *Paulsen* court went on to say "[t]he difficulty we encounter in determining the appropriate remedy to be granted should not be underestimated." 232 F.Supp. at 187. As the court explained, "[a]t the time of the announcement of the Supreme Court decisions (June 15), the election machinery of this state was in progress; the June 30 primary election was imminent. Party nominating conventions had been held weeks prior thereto; the last day permitted by law for the filing of petitions by candidates was more than three weeks prior to June 15; and ballots had been printed, and had been available for use by those electors permitted by the laws of this state to vote as 'absent voters.'" *Id.* at 190. In light of these difficulties, the court held "the Thirty-ninth Legislative Assembly (1965) of North Dakota, consisting of members elected under existing law, will have a de facto status; that at such regular session it should promptly devise and pass legislation creating and establishing a system of legislative districting and apportionment consistent with

14

federal constitutional standards." *Id.* In other words, even though it was operating under a clearly unconstitutional districting map, the court in *Paulson* moved forward with imminent elections and allowed the legislators elected from that map to be seated with de facto status for the next session.

As was also true in *Paulsen*, the 2024 primary election process is well underway for the court-imposed remedial Districts of 9 and 15.

- January 1, 2024: candidates could begin circulating petitions to obtain the required number of signatures to have their names included on the primary election ballot. N.D.C.C. § 16.1-11-15.

- March 3, 2024: 100-day notice of contests included on the primary election ballot. N.D.C.C. § 16.1-07-30(1).

- April 8, 2024: 64-day candidate filing deadline. N.D.C.C. § 16.1-11-06.

- April 17, 2024: 55-day deadline to transmit list of qualified candidates to county auditors. N.D.C.C §16.1-11-20.

- April 26, 2024: 46-day deadline on which ballots must be sent to military and overseas voters who have applied for a ballot by that day. N.D.C.C. § 16.1-07-23; 52 U.S.C. § 20302(a)(8).

- May 2, 2024: 40-day deadline on which ballots must be sent to all other absentee voters who have applied for an absentee ballot by that day. N.D.C.C. § 16.1-07-04.

- May 28, 2024: 15-day early voting for primaries may begin. N.D.C.C. § 16.1-07-15.[4]

---

[4] 15 days prior to the primary election is technically May 27, 2024, but because May 27 falls on a holiday this deadline moves to May 28.

Appellate Case: 24-1171     Page: 20     Date Filed: 05/21/2024 Entry ID: 5395837

As of the filing of this brief, the candidates running in those remedial districts are already qualified and campaigning for the primary. The races and the candidate names are already printed on the ballots. And those ballots have already been sent to military and oversees voters (N.D.C.C. § 16.1-07-23; 52 U.S.C. § 20302(a)(8)) and to absentee voters (N.D.C.C. § 16.1-07-04), and those voters have begun casting ballots for candidates running in the court-imposed remedial Districts of 9 and 15.

In short, there is not sufficient time to change remedial Districts 9 and 15 (and District 14, by extension) for the 2024 primary elections without violating the well-established principle laid out by the United States Supreme Court in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), which directs that courts should not change election rules immediately prior to an election because doing so causes voter confusion and substantial administrative problems. "Court orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5. Consequently, courts "should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (court should "reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree").

16

## CONCLUSION

The Secretary respectfully submits that the district court erred by denying the Assembly's motion to intervene and erred by failing to give the Assembly a reasonable opportunity to enact a remedial plan, but that the 2024 elections should nonetheless continue to proceed under the court-imposed remedial map. *Cf. Upham v. Seamon*, 456 U.S. 37, 44 (1982) (even if it is determined on appeal the district court improperly struck a state's redistricting plan and imposed its own remedial plan, practical realities of an impending election may require "allow[ing] the election to go forward in accordance with the [court-imposed] schedule").

Dated: May 21, 2024

DREW H. WRIGLEY
Attorney General

*/s/ David Phillips*

DAVID R. PHILLIPS
Special Assistant Attorney General
dphillips@bgwattorneys.com
300 West Century Ave., P.O. Box 4247
Bismarck, ND 58502

PHILIP AXT
Solicitor General
pjaxt@nd.gov
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505

*Counsel for Defendant-Appellee*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 4,158 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Times New Roman font.

As required by Eighth Cir. R. 28A(h), this brief has been scanned for viruses and are virus-free.

Date: May 21, 2024

/s/ *David Phillips*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *David Phillips*

19