**In the**

# United States Court of Appeals

**For the**

# Eighth Circuit

Turtle Mountain Band of Chippewa Indians, Spirit Lake Tribe; Westley Davis; Zachery S. King; Collete Brown,

Plaintiffs - Appellees

v.

Michael Howe, in his official Capacity as Secretary of State of North Dakota,

Defendant - Appellee

North Dakota Legislative Assembly,

Movant - Appellant

On Consolidated Appeal of Order Denying Assembly's Motion to Intervene and Order Denying Assembly's Motion for Extension of Time and Adopting Plaintiffs' Proposed Plan 2 as Remedial Plan
To the United States District Court for the District of North Dakota
In Case No. 3:22-cv-00022

## REPLY BRIEF OF MOVANT - APPELLANT

Scott K. Porsborg (ND State Bar ID No. 04904)
sporsborg@smithporsborg.com
Brian D. Schmidt (ND State Bar ID No. 07498)
bschmidt@smithporsborg.com
122 East Broadway Avenue
P.O. Box 460
Bismarck, ND 58501
(701) 258-0630

Attorneys for Movant – Appellant

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ............................................................................... 1

ARGUMENT ....................................................................................... 3

I.    This Court already established the district court's jurisdiction over the Assembly's motion to intervene ...................................... 3

II.   The Tribes' argument against intervention is based on a false premise and conflicts with Supreme Court precedent ................................. 5

      A.    The North Dakota Constitution, the Supreme Court, and this Court acknowledge the Assembly has a protectable interest in establishing legislative districts .......................................... 6

      B.    The Tribes' erroneously claim the Secretary adequately represented the Assembly's interests ................................... 8

      C.    The Tribes cannot establish intervention would result in prejudice to any party .......................................................... 9

      D.    The Assembly's motion to intervene was timely .............................. 12

III.  The district court impermissibly ignored the Assembly and committed reversable error by failing to allow it a reasonable opportunity to develop a remedial plan ...................................... 16

      A.    The Tribes failed to justify why the district court was required to assume its "unwelcome obligation" to "devise a remedial plan" ................................................................. 17

Appellate Case: 24-1171    Page: 2    Date Filed: 06/12/2024 Entry ID: 5402986

B.    The December 22, 2023, deadline did not provide the Assembly with a "reasonable opportunity" to "adopt" a remedial plan .................................................................................. 20

C.    This matter is not moot unless this Court reverses the November 17 judgment in the Secretary's appeal ............................ 23

CONCLUSION ............................................................................................ 25

CERTIFICATE OF COMPLIANCE .......................................................... 27

CERTIFICATE OF SERVICE ................................................................... 28

Appellate Case: 24-1171    Page: 3    Date Filed: 06/12/2024  Entry ID: 5402986

# TABLE OF AUTHORITIES

**CASES:**                                                                 **PAGE(S)**

Berger v. North Carolina State Conference of the NAACP, 597 U.S. 179 (2022) .................................................................................. 7, 8, 9,16

Board of Educ. of St. Louis v. State of Missouri, 936 F.2d 993 (8th Cir. 1991) ...............................................................................................4

Bone Shirt v. Hazeltine, 461 F.3d 1101 (8th Cir. 2006)....................................... 3, 24

Cameron v. EMW Women's Surgical Center, P.S.C., 595 U.S. 267 (2022) ............................................................................................ 14, 16

Cane v. Worcester County, 35 F.3d 921 (4th Cir. 1994)........................... 21, 24, 25

Corby Recreation, Inc. v. General Elec. Co., 581 F.2d 175 (8th Cir. 1978) .............................................................................................17

Cottier v. City of Martin, 445 F.3d 1113 (8th Cir. 2006).................................... 3, 21

Covington v. State, 267 F.Supp.3d 664 (M.D.N.C. 2017) ......................................22

Garza v. Cnty. of Los Angeles, 918 F.2d 763 (9th Cir. 1990) ........................ 15, 21

In re North Dakota Legislative Assembly, 70 F.4th 460 (8th Cir. 2023) ..............................................................................................9, 10

Kennedy Building Associates v. Viacom, Inc., 375 F.3d 731 (8th Cir. 2004) .............................................................................................23

Liddell v. Caldwell, 546 F.2d 768 (8th Cir. 1976) ............................... 12, 13, 14, 16

Marino v. Ortiz, 484 U.S. 301 (1988).......................................................................17

Merill v. Milligan, 142 S.Ct. 879 (2022).................................................................23

National Parks Conservation Ass'n v. E.P.A., 759 F.3d 969 (8th Cir. 2014) ...............................................................................................6

-iv-

Appellate Case: 24-1171     Page: 4     Date Filed: 06/12/2024 Entry ID: 5402986

Williams v. City of Texarkana, Ark., 32 F.3d 1265 (8th Cir. 1994) ......................................................................... 7, 11, 21, 22, 23, 25

Wise v. Lipscomb, 437 U.S. 535 (1978) ..................... 11, 12, 17, 18, 19, 20, 22, 23

**STATUTES:**

N.D.C.C. § 54-35-01(1) ......................................................................... 14

N.D.C.C. § 54-35-17 ......................................................................... 5, 14, 18

N.D. Const. Art. IV ......................................................................... 7

**RULES:**

Fed. R. Civ. P. 24 ......................................................................... 9, 16

Appellate Case: 24-1171     Page: 5     Date Filed: 06/12/2024 Entry ID: 5402986

## INTRODUCTION

The Tribes[1] provide no legal justification for the district court's decisions to ignore the Assembly at every turn and impose a racial gerrymandered redistricting map upon the citizens of North Dakota. Rather, the Tribes misrepresent the Assembly's motion to intervene and other material facts to suit their inapplicable arguments.

Contrary to the Tribes' assertions, the following chain of events led to the present appeal. On November 17, 2023, the district court's "Conclusion and Order" provided the "Secretary and Legislative Assembly shall have until December 22, 2023, to adopt a plan to remedy the violation of Section 2." App. 80; R. Doc. 125, at 39; App. 82; R. Doc. 126, at 2. The Secretary agrees this order triggered the Assembly's unique and distinct redistricting interest. Howe Br. at p. 4. The Secretary further agrees he was "unable to protect the Assembly's interest (nor the State's interest) in developing remedial redistricting legislation" because "[o]nly the Assembly can defend that interest." Howe Br. at p. 5. Once the district court's judgment triggered the Assembly's unique redistricting interest - albeit under wholly unreasonable circumstances - it sought intervention "to protect its well-established right to draw its legislative districts." App. 162; R. Doc. 150, at 1.

---

[1] For the purpose of brevity and readability, Plaintiffs-Appellees Turtle Mountain Band of Chippewa Indians, Sprit Lake Tribe, Wesley Davis, Zachery S. King, and Collette Brown are collectively referred to as "Tribes" throughout this brief.

-1-

The Tribes argue the Assembly lacked standing to intervene and the district court lacked jurisdiction over the Assembly's motion at the remedial stage. Their argument rests upon a false premise and is simply wrong. The Tribes claim the Assembly's motion to intervene "explicitly stated that if intervention were granted, it intended to present arguments contesting that 'its existing plan violates Section 2, or that Plaintiffs met their burden to establish liability', which it 'preserve[d]…for appeal." Tribes Br. at p. 17. This is not true. The Tribes selected portions from footnote 5 of the Assembly's motion - completely out of context - to serve as the foundation of its legal arguments on this appeal. Id.

The Tribes ignore the sentence linked to footnote 5 which provides: "As explained above, the Assembly - not the Secretary - must be afforded a 'reasonable opportunity' to adopt a 'substitute measure' to remedy the asserted violation[5]." App. 169; R. Doc. 150, at 8. Footnote 5 provides "[t]he Assembly does not concede its existing plan violated Section 2 or that Plaintiffs met their burden to establish liability and preserves all arguments for appeal." Id. Obviously, this footnote was to ensure the Assembly's motion could not be used against the Secretary in his pending appeal on the merits in Case No. 23-3655. The Assembly's desire to intervene to protect its unique redistricting interest is clear throughout its motion. See App. 169-170; R. Doc. 150, at 8-9 (asserting it "must be allowed to intervene in this action to protect its well-recognized unique redistricting interests"); App. 175-

Appellate Case: 24-1171    Page: 7    Date Filed: 06/12/2024 Entry ID: 5402986

176; R. Doc. 150, at 14-15 (joining the Secretary's motion to stay judgment pending appeal "for additional reasons than articulated by the Secretary" so it could protect "its 'reasonable opportunity' to develop a map that complies with traditional redistricting principles and this Court's interpretation of the VRA"); App. 176; R. Doc. 150, at 15 (objecting to the Tribes' motion to amend remedial order because it was "clearly an attempt to further deprive the Assembly of any meaningful opportunity to enact a remedial plan through redistricting legislation").

The Tribes' brief is based on a fundamental mischaracterization of the Assembly's motion to intervene. The district court's orders at issue in this consolidated appeal have no support in fact or law and must be reversed.

## ARGUMENT

### I. This Court already established the district court's jurisdiction over the Assembly's motion to intervene.

The Tribes spend five pages arguing the district court did not have jurisdiction over the Assembly's motion to intervene during the remedial stage of this case. Tribes Br. at pp. 14-19. As part of their argument, the Tribes also claim the Assembly waived its right to assert the district court had jurisdiction. Id. at p. 14. This attempt to distract the Court from the merits of the Assembly's appeal ignores reality.

First, the Assembly's motion to intervene explained this Court's precedent in Bone Shirt v. Hazeltine, 461 F.3d 1101 (8th Cir. 2006) and Cottier v. City of Martin,

-3-

445 F.3d 1113 (8th Cir. 2006) established "a clear distinction exists between a finding of § 2 liability and the development of a remedial plan." App. 173; R. Doc. 150, at 12. Moreover, the Assembly argued its interest "in having a 'reasonable opportunity' to adopt a 'substitute measure' was not triggered until the Court found liability under § 2." App. 173; R. Doc. 150, at 12. Contrary to the Tribes' assertions, the stated purpose of the Assembly's motion to intervene was "to protect its well-established right to draw its legislative districts" during the remedial stage. App. 162; R. Doc. 150, at 1.

The Assembly promptly appealed from the district court's denial of its motion to intervene and its appeal was docketed as Case No. 23-3697. <u>See</u> Case No. 23-3697, Dec. 15, 2023, Letter. After the district court erroneously held it lacked continuing jurisdiction over the remedial phase of this case, the Assembly requested this Court grant emergency relief *as part of this appeal*. <u>Id</u>., N.D. Legis. Assembly's Emergency Motion, Dec. 17, 2023. This Court denied the Assembly's motion without prejudice because the district court retained jurisdiction during the remedial phase under <u>Board of Educ. of St. Louis v. State of Missouri</u>, 936 F.2d 993, 995-96 (8th Cir. 1991). <u>Id</u>., Dec. 20, 2023, Order.

Put simply, this Court ruled on the jurisdictional issue raised in the Tribes' brief during the pendency of this appeal. How could the Assembly waive a jurisdictional argument when its own motion - as part of this appeal - triggered this

-4-

Court to settle the question?  The Tribes do not say.  Clearly, the district court had jurisdiction over the Assembly's motion to intervene to protect its legislative interest during the remedial phase.  See Id.

## II.  The Tribes' argument against intervention is based on a false premise and conflicts with Supreme Court precedent.

The Tribes also erroneously assert the Assembly lacked standing to intervene. To support this argument, the Tribes mischaracterize the Assembly's motion to intervene and erroneously claim that "when the Assembly sought intervention in the district court, it did so for the express purpose defending [sic] the existing plan by (1) joining the Secretary's motion to stay, premised on the erroneous contention that Plaintiffs lack a cause of action challenge [sic] the enacted plan, and (2) appealing the district court's ruling that the enacted plan violated Section 2."  Tribes Br. at pp. 26-27.  As explained above, this is simply not true.  As stated in the Assembly's motion, it sought intervention during the remedial stage "to protect its well-established right to draw its legislative districts." App. 162; R. Doc. 150, at 1.  This included joining in the Secretary's motion to stay to protect "its 'reasonable opportunity' to develop a map that complies with traditional redistricting principles and the [district] [c]ourt's interpretation of the VRA." App. 175; R. Doc. 150, at 14. The Assembly also objected to the Tribes' motion to amend the remedial order - which they filed mere hours after Legislative Management authorized retention of outside counsel to intervene under N.D.C.C. § 54-35-17 - because it was a clear

-5-

attempt to "further deprive the Assembly of any meaningful opportunity to enact a remedial plan through redistricting legislation." App. 176; R. Doc. 150, at 15.

Despite the plain language of the Assembly's motion, the Tribes argue the Assembly lacked a protectable legal interest in the case, its interests were adequately represented by the Secretary, the Assembly's intervention would be prejudicial, and the motion was untimely. The Tribes are wrong to do so.

**A.    The North Dakota Constitution, the Supreme Court, and this Court acknowledge the Assembly has a protectable interest in establishing legislative districts.**

The Tribes assert the Assembly lacked a protectable legal interest in this lawsuit, but also acknowledged the Assembly's "interest in enacting a remedial plan" was "sufficient to provide Article III standing." Tribes Br. at pp. 26, 30. Their self-defeating argument should end the inquiry as the Assembly's motion to intervene sought to do just that. Nonetheless, the Tribes argued the Assembly lacked standing to intervene anyway.

The requirements for Article III standing are (1) injury, (2) causation, and (3) redressability. National Parks Conservation Ass'n v. E.P.A., 759 F.3d 969, 974 (8th Cir. 2014). An intervenor must establish an "injury to a legally protected interest that is concrete, particularized, and either actual or imminent" and "a causal connection between the injury and the conduct complained of." Id. Also, the Assembly must establish "a favorable decision will likely redress the injury." Id. at

975.  The Assembly clearly had standing to intervene for its stated purpose.  This is not a close call.

The Assembly's interest in developing redistricting legislation is established by the North Dakota Constitution. N.D. Const. Art. IV, § 2.  The Assembly clearly had an interest to protect its "reasonable opportunity…to meet constitutional requirements by adopting a substitute measure rather than for a federal court to devise and order into effect its own plan." Williams v. City of Texarkana, Ark., 32 F.3d 1265, 1268 (8th Cir. 1994).  This interest was subject to an imminent and actual injury because the district court's order did not provide the Assembly a "reasonable opportunity" to perform its legislative duty. Moreover, the Assembly's injury could have easily been redressed by a favorable decision (i.e. providing it adequate time to complete its redistricting tasks).

The Supreme Court explained "a full consideration of the State's practical interest may require the involvement of different voices with different perspectives. To hold otherwise would risk allowing a private plaintiff to pick its preferred defendants and potentially silence those whom the State deems essential to a fair understanding of its interests." Berger v. North Carolina State Conference of the NAACP, 597 U.S. 179, 195 (2022).  The Supreme Court foresaw the exact scenario present here and explained denial of intervention is "inappropriate when wielded to displace a State's prerogative to…protect its interests." Id. at 197.  Such denial

Appellate Case: 24-1171     Page: 12     Date Filed: 06/12/2024 Entry ID: 5402986

makes "little sense" and does "much violence to our system of cooperative federalism." Id.  The Tribes acknowledged the Assembly possessed an interest in developing remedial legislation. Tribes Br. at p. 29.  This was the exact interest the Assembly sought intervention to protect.  App. 162-179; R. Doc. 150. The Assembly clearly had standing to intervene at the remedial stage of this lawsuit.

**B.    The Tribes' erroneously claim the Secretary adequately represented the Assembly's interests.**

The Tribes assert this Court should "presume the Attorney General's representation" of the Assembly's interests was "adequate" as an alternative ground for affirming the district court's order.  Tribes Br. at pp. 32-33.  First, in this context, the Supreme Court explained such a presumption is inappropriate.  Berger, 597 U.S. at 197.  Second, the Attorney General's brief - submitted on behalf of the Secretary - agreed "the Assembly's interest in developing redistricting legislation is no longer adequately protected by the existing parties to the legislation."  Howe Br. at p. 4.  It is difficult - if not impossible - to imagine a more appropriate circumstance for the Assembly to intervene.  The Secretary admits the following:

> …**the Secretary is unable to protect the Assembly's interest (nor the State's interest) in developing remedial redistricting legislation** because the Secretary has no authority to develop such legislation. Only the Assembly can defend that interest, as it has sole authority under the State Constitution to develop and enact redistricting legislation.  Although the Secretary has defended the validity of the redistricting map enacted by the Assembly at issue in this case - and he continues to defend the validity of that map on appeal - his reasons and authority for doing so are distinct from those of the Assembly.

-8-

Howe Br. at p. 5 (emphasis added).

The district court knew of this issue and acknowledged the Secretary opposed the Assembly's request for an extension of time to develop a remedial plan. App. 285; R. Doc. 164, at 1. The Secretary explained he did this because - as the officer charged with administration of elections - securing a final map for the 2024 election was his primary concern. Howe Br. at p. 9. The district court's delays, and subsequent decisions, placed the Secretary "in a very difficult position." Id. The Secretary admitted his interest in administering the election conflicted with the Assembly's interest to develop remedial redistricting legislation. By the Secretary's own admission, the Assembly's legislative interests were not represented when it sought intervention. The district court cast aside the separation of powers, federalism, and basic rights secured by the North Dakota constitution when it denied the Assembly's motion to intervene. The Assembly was clearly entitled to intervene in this litigation under both Fed. R. Civ. P. 24 and Berger.

C.    **The Tribes cannot establish intervention would result in prejudice to any party.**

The Tribes claim - without support - the "Assembly's intervention would severely prejudice Plaintiffs." Tribes Br. at p. 33. This claim ignores the actual issues in this present appeal. Rather, the Tribes expend great effort venting grievances related to this Court's decision in In re North Dakota Legislative

<u>Assembly</u>, 70 F.4th 460 (8th Cir. 2023).  Tribes Br. at pp. 33-36.  The Assembly's motion to intervene and this Court's decision in <u>In re North Dakota Legislative Assembly</u> have absolutely nothing to do with one another.

The Tribes are correct that the Assembly did not seek intervention until after the district court entered judgment.  Tribes Br. at p. 34.  It is unclear how the Assembly's intervention during the remedial stage of this lawsuit would "severely prejudice" the Tribes as they allege.  <u>See</u> Tribes Br. at p. 33.  In fact, the Tribes cite absolutely no example as to how it would.  Instead, they assert this was done as part of some grand scheme to preserve legislative privilege and avoid discovery.  Tribes Br. at pp. 33-36.  This argument is absurd.  Had the Secretary prevailed at trial, this case would not have reached a remedial phase. The district court would not have triggered the Assembly's legislative interest.  The Assembly would have no reason to intervene. However, this did not happen and the Assembly was forced to intervene to protect its legislative interest during the remedial stage.  The Assembly's motion to intervene clearly had nothing to do with a discovery dispute this Court resolved in the Assembly's favor prior to trial.

Putting the Tribes' accusations aside, the Assembly's opening brief made clear the "interests of the Secretary and the Assembly were aligned through trial as both had an interest in defending the existing statutes establishing legislative districts in North Dakota."  Assembly Op. Br. at p. 35.  Obviously, it would have been futile for

-10-

the Assembly to intervene and duplicate the Secretary's defense efforts against the Tribes' attack on the established legislative districts. However, this changed once the district court found a Section 2 violation and ordered that the Secretary and Assembly "shall have until December 22, 2023, to adopt a plan to remedy the violation of Section 2." App. 80; R. Doc. 125, at 39. The district court's order and judgment triggered the Assembly's unique legislative redistricting interest. See Wise v. Lipscomb, 437 U.S. 535, 540; Williams, 32 F.3d at 1268. As explained above, the Assembly's interests during the remedial stage were not protected by the Secretary. This clearly warranted intervention and it is completely unclear how the Tribes would be prejudiced as a result.

Presumably, the Tribes realized they could not establish prejudice to themselves. Instead, they pivoted to claim the "citizens of North Dakota" would suffer prejudice if the Assembly were allowed to intervene. Tribes Br. at p. 36. This assertion offends fundamental principles of democracy.

The North Dakota Constitution vests the Assembly with the sole power to establish legislative districts. How could the citizens of North Dakota suffer prejudice because a federal court allowed their chosen legislative body to defend their constitutional interest and perform their constitutional duty? They simply cannot.

-11-

Indeed, the district court silenced North Dakota's elected representatives when it denied the Assembly's motion to intervene. It then imposed legislation upon North Dakota's citizens by judicial fiat at the request of a party to a private civil action. It is mystifying why the Tribes argue North Dakota's citizens would suffer prejudice if their elected Assembly were allowed to intervene. For good reason, the Supreme Court does not agree with the Tribes' claim. See Wise, 437 U.S. at 539 (explaining redistricting is a "legislative task which the federal courts should make every effort not to pre-empt"). The Tribes' claim of prejudice directly conflicts with Supreme Court precedent and the foundation of federalism that lies at the heart of our democratic republic.

**D.    The Assembly's motion to intervene was timely.**

The Tribes claim the Assembly was "unaware whether judgment *would* be entered for Plaintiffs" prior to submitting its motion, so it had no basis to delay intervention. Tribes Br. at p. 23. This position is contrary to this Court's precedent. See Liddell v. Caldwell, 546 F.2d 768 (8th Cir. 1976) (finding district court abused its discretion in denying intervention during remedial stages of litigation). In fact, Liddell makes it abundantly clear the district court's cavalier dismissal of the Assembly's motion to intervene must be reversed.

In February 1972, a group of plaintiffs filed a class action against the St. Louis Board of Education and others alleging racial segregation and discrimination.

-12-

Liddell, 546 F.2d at 769. After completion of discovery, the district court "invited other interested parties to intervene on or before December 1, 1973. No one applied for intervention." Id. On December 24, 1975, the parties entered into a consent decree which the district court approved. Id. However, the 1975 consent decree did not constitute the overall plan for desegregation and the district court ordered the school board to "make further study" and produce a report by January 1977 for "implementation to begin September, 1977." Id. at 771.

In January 1976, six students and the St. Louis Chapter of the NAACP filed objections to the consent decree and sought to intervene. Id. at 769. The district court denied the motion to intervene as untimely and found the proposed intervenors interests were adequately represented. Id. The proposed intervenors timely appealed. Id. Like the Assembly, the proposed intervenors did not seek intervention earlier because "there was nothing at that time, or at any other time until the consent decree appeared, to indicate" their interests were not adequately represented. Id. at 770. Also, like the Assembly, the proposed intervenors did not "attempt to assert a right to relitigate or undo the factual stipulations of the parties." Id. Moreover, like here, a final remedial plan was not in place when the potential intervenors sought intervention. Id. at 771. In light of these factors, this Court held "the district court erred in denying the petition for intervention for lack of timeliness" because the

-13-

remedial plan was "still on the drawing board" and the potential intervenors' primary purpose for intervention related to "the ultimate plan of desegregation." Id. at 771.

The district court committed reversable error by finding it "axiomatic" the Assembly's motion was "untimely per Federal Rule of Civil Procedure 24." App. 184; R. Doc. 153, at 5. Rather, this Court explained timeliness of a motion to intervene "is to be determined from all the circumstances of the case." Liddell, 546 F.2d at 770 (internal quotation omitted); see also Cameron v. EMW Women's Surgical Center, P.S.C., 595 U.S. 267, 279 (2022) (holding same). Neither the district court nor the Tribes addressed the actual circumstances of the case because they clearly established the Assembly's motion was timely.

As previously explained, the Assembly was not in session when the district court called upon it to act on November 17, 2023. App. 80; R. Doc. 125, at 39. Since the Assembly was neither in session nor a party to the lawsuit, North Dakota law required Legislative Management pass - by a majority vote - a motion to authorize Legislative Council to retain legal counsel to intervene[2]. See N.D.C.C. § 54-35-17. The district court issued its order on a Friday. The following week was Thanksgiving. Nonetheless, numerous meetings occurred between members of

---

[2] Legislative Management is a bipartisan committee comprised of seventeen elected part-time citizen lawmakers (senators and representatives) from across North Dakota. See N.D.C.C. § 54-35-01(1); see also https://ndlegis.gov/assembly/682023/committees/interim/legislative-management (accessed June 9, 2024).

-14-

North Dakota's executive and legislative branches with respect to the district court's order during this time frame.  App. 209; R. Doc. 158, at 1.  A mere six business days after the district court's judgment, the Chairman of Legislative Management directed Legislative Council publish a notice for a meeting of Legislative Management.  Id. Legislative Management met in accordance with the published notice and passed a motion to authorize outside counsel to intervene and protect the Assembly's legislative interest during the remedial stage of this lawsuit.  App. 135; R. Doc. 139-2, at 1.  In accordance with this directive, the Assembly filed its motion to intervene on December 8, 2023.  App. 162-179; R. Doc. 150.

Neither the district court nor the Tribes consider these circumstances.  Rather, the Tribes cite the Ninth Circuit's opinion in Garza v. Cnty. of Los Angeles, 918 F.2d 763 (9th Cir. 1990) to claim the Assembly's motion was not timely because it "waited to see whether the judgment was adverse to [its] interests before getting involved."  Tribes Br. at p. 23.  As explained above, binding precedent does not support this argument.  Neither does Garza, which merely held a political candidate untimely sought intervention after judgment when "interests that she claimed to advocate either were already represented in the case or had not been proven to exist." Garza, 918 F.2d at 777.  The Tribes do not cite a single case in support of the district court's order under these circumstances.  This is because the law does not allow for

-15-

such absurdities.  See Berger, 597 U.S. at 191-97; Cameron 595 U.S. at 279-80; Liddell, 546 F.2d at 769-771.

Put simply, if a group of private parties timely sought intervention so they could object to a proposed remedial plan in Liddell, then the Assembly's motion - to protect its unique legislative right to develop a remedial plan - is undoubtedly timely within the meaning of Fed. R. Civ. P. 24.  The district court's conclusory dismissal of the Assembly's motion is contrary to this Court's holding in Liddell, and Supreme Court precedent.  Cameron, 595 U.S. at 279-80; Berger, 597 U.S. at 191-97.

## III.   The district court impermissibly ignored the Assembly and committed reversable error by failing to allow it a reasonable opportunity to develop a remedial plan.

After the district court erroneously found it lacked jurisdiction over the remedial proceedings, this Court authorized the Assembly to seek relief from the district court's unilaterally imposed deadline. Case No. 23-3697, Dec. 20, 2023, Order.  The Assembly did so.  App. 192-208; R. Doc. 157.  The district court ignored the Assembly's request - because intervention was already denied - and proceeded to strip the Assembly of its legislative duties on January 8, 2024.  App. 285-287; R. Doc. 164.  Specifically, the district court believed it only needed to provide the "Secretary…a reasonable time…to propose a remedial plan." App. 286; R. Doc. 164, at 2.  The district court then concluded that since the Secretary elected "to not offer a proposed remedial plan" (despite having absolutely no authority to do so), it had

-16-

no choice but to impose the Tribes' map upon the citizens by judicial fiat. App. 286-287; R. Doc. 164, at 2-3. The district court did so while ignoring the Assembly's continued objections. App. 276-284; R. Doc. 163. Yet, the Tribes allege this Court lacks jurisdiction over the Assembly's appeal from that order. Tribes Br. at pp. 36-37. This argument is meritless.

Had the district court not erroneously denied the Assembly's motion to intervene, it would have been a party during the remedial proceedings. This Court clearly has jurisdiction to reverse the district court's order denying the Assembly's motion to intervene. Corby Recreation, Inc. v. General Elec. Co., 581 F.2d 175, 176 n.1 (8th Cir. 1978). Since the Assembly should have been a party to the remedial proceedings, this Court certainly has jurisdiction over its appeal of the district court's January 8, 2024, order. Marino v. Ortiz, 484 U.S. 301, 304 (1988) (holding "those that properly became parties" to a lawsuit "may appeal an adverse judgment"). The district court wrongfully denied the Assembly's motion to intervene and it would be illogical to conclude the consequences of that error are immune from appellate review.

A. **The Tribes failed to justify why the district court was required to assume its "unwelcome obligation" to "devise a remedial plan."**

Oddly, the Tribes assert the district court's order should be affirmed under Wise which provides "that 'when those with legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so,

-17-

it becomes the unwelcome obligation of the federal court' to devise a remedy." Tribes Br. at p. 38 (quoting <u>Wise</u>, 437 U.S. at 540). If either of these two scenarios were present here, the Tribes may have a point; however, neither existed. The Tribes followed the district court's lead and dismissed the Assembly's efforts to enact a plan prior to January 8, 2024. It is undisputed the Assembly was the only body who possessed "legislative responsibilities." There is absolutely no basis to claim the Assembly did not respond to the district court's order.

As explained above, on December 5, 2023, Legislative Management authorized intervention to protect the Assembly's unique legislative interests under N.D.C.C. § 54-35-17. It also formed a Redistricting Committee "after discussions with the Senate Majority Leader and Minority Leadership." App. 136; R. Doc. 139-2, at 2. The Redistricting Committee consisted of 5 State representatives and 5 State senators. App. 152; R. Doc. 139-2, at 18. Also, Legislative Management authorized Legislative Council to "issue a request for proposals for the purpose of engaging an expert to help the newly formed Redistricting Committee with its analysis." App. 136; R. Doc. 139-2, at 2; App. 217-218; R. Doc. 158-2. With the wheels in motion, the Assembly moved to intervene on December 8, 2023. App. 162-179; R. Doc. 150. The Redistricting Committee held meetings, heard input from interested members of the public, considered various possible maps during meetings, and

-18-

invited the tribal chairs to provide input prior to December 22, 2023.[3]  App. 209-215; R. Doc. 158; App. 216; R. Doc. 158-1; App. 217-218; R. Doc. 158-2; App. 219-221; R. Doc. 158-3, at 1-3.

While taking these extensive steps through the legislative process, the Assembly requested additional time to complete its legislative task from both this Court and the district court.  In fact, the district court issued its order one day prior to the Redistricting Committee's next meeting.  See https://ndlegis.gov/assembly/68-2023/interim/25-5091-01000-postponed-meeting-notice.pdf  (accessed  June  10, 2024).  There are no grounds upon which one could conclude the Assembly did not respond to the district court's order under Wise.

Nor can it be said the "imminence of a state election" made it "impractical" for the Assembly to respond.  See Wise, 437 U.S. at 540.  In fact, on December 12,

_____

[3] The Tribes' disdain for the Assembly's efforts was evident throughout litigation and also this appeal.  For example, the Tribes moved to expedite the remedial process approximately 6 hours after Legislative Management's December 8 meeting. App. 176; R. Doc. 150, at 15.  Moreover, the Tribes assert testimony offered "on behalf of members of the Turtle Mountain Band of Chippewa Indians" to the Redistricting Committee should be wholly ignored because they cut against the Tribes' litigation strategy.  See App. 220; R. Doc. 158-3, at 2; Tribes Br. at pp. 46-47 n. 8. As explained in the Assembly's initial brief, video exists of this testimony. Assembly Op. Br. at pp. 16-17.  Legislative Council sought further input from the chairs of both Turtle Mountain and Spirit Lake; however, neither tribal chair responded. See App. 245; R. Doc. 158-6; App. 246; R. Doc. 158-7.  It is completely unclear why the Tribes accuse the Assembly of making "untrue" statements when it simply quoted video of the Redistricting Committee's meeting.  Compare Tribes Br. at p. 47 n. 8 with Assembly Op. Br. at pp. 16-17.

-19-

2023 (10 days prior to its unilaterally set deadline), the district court stated "there is no imminent election" and found it "strains credibility to seriously suggest otherwise."   App. 182; R. Doc. 153, at 3.   Under these circumstances, it never became the district court's "unwelcome obligation" to "devise a remedy."  Wise, 437 U.S. at 540.

### B.   The December 22, 2023, deadline did not provide the Assembly with a "reasonable opportunity" to "adopt" a remedial plan.

For good reason, the Tribes do not argue the district court's finding that it "provided a reasonable opportunity to the Secretary to propose his own plan to correct the proven Section 2 violation" (App. 286; R. Doc. 164, at 2) complied with the law. The Secretary lacked any authority to do so. See Howe Br. at p. 3 (explaining "the Secretary does not have any constitutional authority to change the State's elections laws or to redraw the State's redistricting map").  This point cannot be disputed and the district court's decision to the contrary alone constitutes sufficient grounds for reversal.

Rather, the Tribes argue the district court "acknowledged that if there was a legislatively enacted remedial plan by December 22, the Secretary-as the defendant in and party to the case-could submit that map to the court for review." Tribes Br. at p. 39.  First, as explained above, the Tribes misrepresent the plain language of the district court's order and judgment. App. 80; R. Doc. 125, at 38; App. 82; R. Doc. 126, at 2.  Second, the district court must "afford a reasonable opportunity for the

legislature to meet constitutional requirements by adopting a substitute measure" as part of the remedial phase of a Section 2 lawsuit. <u>Williams</u>, 32 F.3d at 1268. This is because when a legislative body adopts a remedy through the legislative process "the court may not thereupon simply substitute its judgment of a more equitable remedy for that of the legislative body; it may only consider whether the proffered remedial plan is legally acceptable." <u>Cane v. Worcester County</u>, 35 F.3d 921, 927 (4th Cir. 1994)[4]. The district court must "accord great deference to legislative judgments about the exact nature and scope of the proposed remedy" because it reflects "a variety of political judgments about the dynamics of an overall electoral process that rightly pertain to the legislative prerogative of the state and its subdivisions." <u>Id</u>. However, a court has no duty to provide this deference if the proposed plan is not enacted through proper legislative channels. <u>See</u> <u>Garza</u>, 918 F.2d at 776 (explaining deference to a remedial proposal put forward by county supervisors was not required because it "was not an act of legislation" because "only three members voted in favor of it, not the four required for such matters"). In other words, the district court must actually afford a legislative body a "reasonable opportunity" to "adopt" a remedial plan through regular legislative channels.

---

[4] This Court cited <u>Cane</u> for guidance on the remedial stage of a VRA case. <u>See</u> <u>Cottier</u>, 445 F.3d 1113, rev'd. on other grounds by <u>Cottier v. City of Martin</u>, 604 F.3d 553 (8th Cir. 2010).

The Tribes do not cite a single case holding the district court's deadline was "reasonable" in the circumstances present here. After five months of silence, the district court issued its order finding a violation of Section 2 while the part-time citizen Assembly was not in session. Legislative Management and the Redistricting Committee undertook significant effort to fulfill the Assembly's constitutional obligations in light of this order.

The district court's refusal to consider the Assembly's efforts is in direct conflict with Supreme Court precedent. See Wise, 437 U.S. at 539 (explaining federal courts should "make every effort not to pre-empt" a legislature from performing its redistricting task). The Assembly requested an extension in light of North Dakota's requirements to formally "adopt" redistricting legislation. See App. 189-191; R. Doc. 156; App. 192-208; R. Doc. 157; App. 209-215; R. Doc. 158. In response, the district court refused to consider the Assembly's position, faulted the Secretary - who lacked any legal authority - for not submitting a plan, and legislated from the bench at the Tribes' request. App. 285-287; R. Doc. 164. The district court's actions were clearly not in accordance with any interpretation of Supreme Court precedent. See Wise, 437 U.S. at 539; Williams, 32 F.3d at 1268; see also Covington v. State, 267 F.Supp.3d 664 (M.D.N.C. 2017) (recognizing the importance of the legislative process during the remedial stage and stating a

-22-

preference "to give the legislature some additional time to engage" in that process). This decision must be reversed.

**C.    This matter is not moot unless this Court reverses the November 17 judgment in the Secretary's appeal.**

The Assembly does not dispute that resolution of this appeal is unnecessary if the Court finds the Tribes do not have a cause of action as part of the Secretary's appeal in Case No. 23-3655.  However, if the Section 2 violation is affirmed, then this appeal is not moot. The Tribes bear a "heavy burden of proving mootness" and to do so they must show the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Kennedy Building Associates v. Viacom, Inc., 375 F.3d 731, 745 (8th Cir. 2004).  Neither scenario is present here.

The Assembly was never provided a "reasonable opportunity" to develop a remedial plan as required.  Wise, 437 U.S. at 539; Williams, 32 F.3d at 1268.  This is a 'live' controversy and the Assembly clearly has a legally cognizable interest in being afforded a reasonable opportunity to develop a remedial plan as part of this lawsuit.  This remains true even if the district court's remedial order remains in place for the 2024 election[5].  See Merill v. Milligan, 142 S.Ct. 879, 882 (2022) (J.

---

[5] The Secretary's brief asserts elections for the judicially created districts must take place in the 2024 election.  This is a matter of State law which does not need to be resolved by this Court here. However, this would not render this issue moot as the State remains stuck with a judicially imposed racially gerrymandered map its elected representatives never had a "reasonable opportunity" to adopt.

-23-

Kavanaugh concurrence) (explaining practical considerations require courts allow elections to proceed despite pending legal challenges and remedies may be imposed for subsequent elections). While the damage may be done for the 2024 election, this issue is certainly not moot.

The Tribes attempt to downplay the fact its proposed plan - as adopted by the district court - resulted in a racial gerrymander. The law is not designed to result in a wholesale adoption of a litigants' map prepared to establish the *Gingles* preconditions during the liability stage of a Section 2 lawsuit. See <u>Bone Shirt</u>, 461 F.3d at 1019 (explaining "the *Gingles* preconditions are designed to establish liability, and not a remedy" because plaintiffs are only required to produce a "*potentially* viable" solution during the liability phase) (italics in original). In fact, the remedial process is designed to prevent this exact situation. See <u>Cane</u>, 35 F.3d at 927 (explaining a legislative body's proposed remedial plan should be afforded "great deference" as it reflects political judgments and the legislative prerogative of a state). The Tribes arguments to the contrary are misplaced.

Moreover, the district court's finding that devising a remedy for a Section 2 violation "provides a compelling justification for adopting one of the proposed plans" even if the proposed plan results in "illegal racial gerrymanders" (App. 61 n.3; R. Doc. 125, at 20) is presently on a direct appeal to the Supreme Court in <u>Walen v. Burgum</u>, Sup. Ct. Case No. 23-969. The problems caused by the district court's

-24-

orders can easily be remedied if the Assembly is afforded a "reasonable opportunity…to meet constitutional requirements" and adopt a substitute measure. Williams, 32 F.3d at 1268.

The district court's rush to impose a racial gerrymandered redistricting map upon North Dakota will remain a problem if this Court does not allow the Assembly a "reasonable opportunity" to fix it. This includes developing redistricting legislation through the proper legislative channels for judicial consideration under the appropriate level of scrutiny. See Cane, 35 F.3d at 927. Unfortunately, this never happened. Rather, the district court adopted the Tribal Nation's map that was prepared to satisfy the *Gingles* preconditions. The federal judiciary imposed new legislation upon North Dakota's citizens and did not follow the appropriate channels to do so. This controversy will remain alive after the 2024 election as it works its way through the court system. This case is not moot.

## **CONCLUSION**

If this Court reverses the district court's November 17, 2023, judgment as part of the Secretary's appeal in Case No. 23-3655, then resolution of this appeal is unnecessary. However, if the Secretary's appeal is unsuccessful, the district court's order denying the Assembly's motion to intervene should be reversed, its order adopting the Tribes' proposed map should be vacated, and the Assembly should be afforded a "reasonable opportunity" to adopt and submit a remedial plan which shall

-25-

be afforded the required deference. While the damage may be done for the 2024 election cycle, the district court's numerous errors should not be allowed to poison North Dakota's elections until the 2030 Census data becomes available.

Dated this 11th day of June, 2024.

SMITH PORSBORG SCHWEIGERT
ARMSTRONG MOLDENHAUER & SMITH

By /s/ Scott K. Porsborg
Scott K. Porsborg (ND Bar ID #04904)
sporsborg@smithporsborg.com
Brian D. Schmidt (ND Bar ID #07498)
bschmidt@smithporsborg.com
122 East Broadway Avenue
P.O. Box 460
Bismarck, ND 58502-0460
(701) 258-0630

Attorneys for Movant - Appellant

-26-

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) as it uses the proportionally spaced typeface of Times New Roman in 14-point font.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) as it contains 6,275 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

The electronic version of the foregoing Brief submitted to the Court pursuant to Eighth Circuit Local Rule 28A(h)(2) was scanned for viruses and that the scan showed the electronic version of the foregoing is virus free.

Dated this 11th day of June, 2024.

By  /s/ *Scott K. Porsborg*
SCOTT K. PORSBORG

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2024, I electronically submitted the foregoing **REPLY BRIEF OF MOVANT - APPELLANT** to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit for review by using the CM/ECF system and that ECF will send a Notice of Electronic Filing (NEF) to all participants who are registered CM/ECF users.


By /s/ Scott K. Porsborg
　　 SCOTT K. PORSBORG

Appellate Case: 24-1171   Page: 33   Date Filed: 06/12/2024 Entry ID: 5402986